IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **ENRIQUETA DIAZ** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | NO. 2:23-CV-00060-AM |
| | § | |
| | § | |
| **RAMSEY ENGLISH CANTU**, in his individual capacity and in his official capacity; **ROXANNA RIOS**, in her individual capacity and in her official capacity; **OLGA RAMOS**, in her individual capacity and in her official capacity; and **ROBERTO RUIZ**, in his individual capacity and in his official capacity, | § § § § § § § § § | |
| *Defendants* | | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TO THE HONORABLE CHIEF JUDGE ALIA MOSES:**

NOW COMES **ENRIQUETA DIAZ**, referred to herein as Plaintiff, complaining of Defendants **RAMSEY ENGLISH CANTU, in his individual capacity and in his official capacity; ROXANNA RIOS, in her individual capacity; OLGA RAMOS, in her individual capacity and in her official capacity; and ROBERTO RUIZ, in his individual capacity and in his official capacity (collectively "Defendants" hereinafter),** and for cause of action, would respectfully show unto the Court and jury the following:

**I.**

**NATURE OF THE CASE**

**THE CLAIM:** Maverick County Judge Ramsey English Cantu violated Ms. Diaz's constitutional rights to be free of unreasonable seizures under the Fourth Amendment to the United States

1

Constitution when he unjustifiably and without probable cause held her in contempt and directed she be detained for twenty-four hours on 10 October 2023. This detention was based upon Ms. Diaz's exercise of her rights under the First Amendment to the United States Constitution during a Maverick County Commissioners Court meeting and was without legal or factual cause or justification. Ms. Diaz was detained for approximately three to four hours and was ultimately subjected to the booking process at the Maverick County Jail, albeit released shortly thereafter.

Maverick County Commissioners Roxanna Rios, Olga Ramos, and Roberto Ruiz violated Ms. Diaz's rights through their failure to intervene during the meeting when County Judge English Cantu threatened to hold Ms. Diaz in contempt without legal or factual cause or justification to do so. Each of these Commissioners elected not to intervene despite the unlawful detention of Ms. Diaz occurring before their very eyes.

## II.
## PARTIES

1. Plaintiff, **ENRIQUETA DIAZ** is a resident of Maverick County, Texas.
2. Maverick County, Texas is a political subdivision of the State of Texas and the Commissioners Court is the legislative and governing body of the County.
3. Defendant County Judge English Cantu is responsible for implementing the policies and decisions of Maverick County, Texas as the County's primary administrator.
4. Defendants County Judge English Cantu and Commissioners Rios, Ramos, and Ruiz are tasked with appropriating, reviewing, and implementing the Maverick County, Texas budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.
5. Defendants may be served by individually, at the Maverick County Courthouse, 500 Quarry St., Eagle Pass, TX 78852 or wherever they may be found.

## III.
## JURISDICTION

6. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

2

7. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.
8. Venue is also appropriate in the Western District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in City of Eagle Pass, Maverick County, Texas, which is in the Del Rio Division of the Western District of Texas.

## IV.
## FACTS AND ALLEGATIONS

9. On 10 October 2023, Ms. Isamari S. Villarreal, Elections Administrator for Maverick County, Texas, was presented with a petition signed by over 5% of the registered voters of Maverick County, wherein such signatories were demanding an election on certificates of obligation in the amount of $7.2 million, sought to be issued by Maverick County.
10. Ms. Villarreal's office verified the requisite number of signatures, verifying same on 27 October 2023. The total number of signatures required to force the election as provided under state law, Section 271.049(c), Texas Local Government Code, was 1552 (5% of the registered voters). The petition presented bore 1,665 verified signatures, entitling Ms. Diaz and the other residents of Maverick County to an election on the certificates of obligation (COs).
11. Thereafter, on 30 October 2023, the Maverick County Commissioners Court held a Commissioners Court meeting.
12. During the meeting, the subject of the COs and their issuance came up. The meeting grew tense, with Defendant English Cantu making statements regarding "moving the County forward" and that the certificates of obligation would be issued in spite of the petition to force a bond election, as provided by state law.
13. At some point during the meeting, on information and belief, Defendant English Cantu and Ms. Diaz, the eighty-one (81) year old former County Judge of Maverick County, had a series of tense verbal exchanges. Defendant English Cantu then threatened to hold Ms. Diaz in contempt if she continued talking.
14. Defendants Roxanna Rios, Olga Ramos, and Roberto Ruiz, all in plain view of Defendant English Cantu's probable causeless threat to detain and detention of Ms. Diaz did not

3

attempt to intervene or remind Defendant English Cantu that he did not have the authority to hold Ms. Diaz in contempt as threatened. Commissioner Gerardo "Jerry" Morales, on information and belief, did attempt to intervene and prevent Defendant English Cantu from detaining Ms. Diaz in violation of her Fourth Amendment rights.

15. On information and belief, Ms. Diaz did *not* continue talking, but Defendant English Cantu believed she had continued talking. He then ordered her taken into custody by a law enforcement officer, who escorted Ms. Diaz outside.

16. During the pendency of Ms. Diaz's detention, she was not permitted to re-enter the Commissioners Court meeting and was, at some point, outside in the rain.

17. On information and belief, at some point during the time that Ms. Diaz was in the holding cell, he began yelling and kicking the door of the holding cell.

18. On information and belief, Ms. Diaz was detained for approximately three to four hours in the rain. On information and belief, during such time as Ms. Diaz was being detained, Defendant English Cantu and Maverick County deputies conferred on whether he in fact had jurisdiction to hold her in contempt and/or detain her as he was currently doing.

19. At some point after Ms. Diaz's initial detention began, Defendant English Cantu issued his *Order of Contempt of Court*, wherein he directed the Maverick County Sheriff to "hold Enriqueta Diaz in confinement at the Maverick County Jail for 24 hours commencing from the time of arrest and released no sooner."

20. The *Order* further went on to issue a threatening edict, reading: "Any deviation from this Court Order can and will result in further contempt findings for any individuals interfering with this matter."

21. Thereafter, Ms. Diaz was booked into the Maverick County Jail and released shortly after booking.

## V.
## CAUSES OF ACTION

### COUNT ONE – FALSE IMPRISONMENT
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. §1983 Against Defendant Ramsey English Cantu

4

22. Ms. Diaz repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

23. For clarity, reasonable suspicion "must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion…The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized…'hunch.'" *Goodson,* at 736 (citing *United States v. Michelet*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc)).

24. Probable cause, by contrast, "is present when the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*, at 740 (citing *Vance v. Nunnery*, 137 F.3d 270, 276 (5th Cir. 1998 (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).

25. Accordingly, Defendant English Cantu knew he had no legal authority or arguable probable cause to hold Ms. Diaz or order further that she be detained in the Maverick County Jail following her initial detention.

26. The essential elements of a false imprisonment claim are (1) willful detention; (2) without consent; and (3) without authority of law. *Vissage v. City of Reno*, 2007 U.S. Dist. LEXIS 82358,* 14 (E.D. Tex. November 6, 2007).

27. Defendant English Cantu willfully detained Ms. Diaz by ordering a Maverick County deputy sheriff to escort her from the Commissioners Court meeting; and furthermore, in executing an order to detain her without legal cause to do so.

28. Defendant English Cantu also detained Ms. Diaz without her consent. At no point did Ms. Diaz consent to her detention.

29. Defendant also had no authority to hold Ms. Diaz in contempt, at least not unilaterally under Texas law. Section 81.023 of the Texas Government Code provides that …"the commissioners court shall punish a person held in contempt by a fine of not more than $25 or by confinement for not more than 24 hours. A person fined under this section may be confined until the fine is paid."

30. The statute does not vest the authority to hold someone in contempt in the County Judge individually; it contemplates, instead, that the contempt decision is made *collectively*.

5

31. Notwithstanding this, the contempt decision, on information and belief, must be predicated on findings of probable cause or some other legal finding justifying state detention of Ms. Diaz besides her exercise of her First Amendment rights of free speech and to petition the government for redress of grievances.

32. The Fourth Amendment to the United States Constitution protects citizens, like Ms. Diaz, against unlawful and unreasonable searches and seizures.

33. Moreover, Ms. Diaz's being subject to the booking procedure – and all the collateral consequences including fingerprints, inclusion in TCIC/NCIC, and issuance of a SID number – create potential reputational damages incidental to this unlawful seizure.

34. Accordingly, Ms. Diaz commences this action pursuant to 42 U.S.C. § 1983.

## COUNT TWO
## Bystander Claim Under 42 U.S.C. § 1983 Against Defendants Rios, Ramos, and Ruiz

35. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-34 above as though fully delineated below with respect to each cause of action.

36. "Bystander liability attaches when an officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Callaway v. Travis Cnty.*, 2016 U.S. Dist. LEXIS 186372, *25 (W.D. Tex. July 28, 2016)(citing *Whitney v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

37. In the instant case, the unlawful detention of Ms. Diaz occurred during a Maverick County Commissioners Court meeting wherein Defendants Rios, Ramos, and Ruiz were present.

38. During the course of the meeting, it became clear that tensions between Ms. Diaz and Defendant English Cantu has risen.

39. In response to those rising tensions, Defendant English Cantu began openly manifesting an intent to both deprive Ms. Diaz of her First Amendment right to free speech and the threat to hold her in contempt if she did not cease talking.

40. Commissioner Morales, on information and belief, observing what was taking place, attempted to intervene and stop Defendant English Cantu from holding Ms. Diaz in contempt and detaining her, presumably realizing that Defendant English Cantu did not have legal cause to detain her and was thus preparing to violate Ms. Diaz's constitutional rights.

41. By contrast, Defendants Rios, Ramos, and Ruiz, chose not to intervene and thus "functionally participate[d] in the unconstitutional act of their fellow officer," Defendant English Cantu. *Id.* (citing *Hanna*, 726 F.3d at 647 (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 n.24 (5th Cir. 2002))).

42. Accordingly, Ms. Diaz commences this action pursuant to 42 U.S.C. § 1983.

## VII.
## QUALIFIED IMMUNITY UNDER § 1983

43. County elected officials may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

    a. The individual's acts deprived the party of constitutional rights under color of law;

    b. The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

    c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

44. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524.

45. Defendants English Cantu, Rios, Ramos, and Ruiz, acting under color of state law, deprived Ms. Diaz of her civil liberties, without due process of law, by unlawfully detaining and failing to intervene to stop her unlawful detention, respectively.

46. No reasonable official could have believed that detaining Ms. Diaz was lawful, remotely appropriate in this circumstance, particularly as she was merely exercising her First Amendment rights, *in a public forum*, *regarding a public matter, upon which she had prepared a petition to force an election*. Ms. Diaz's conduct is emblematic of the fundamental essence of the First Amendment and the genesis behind its bedrock protections.

47. "Any reasonable officer should have realized that [Defendant English Cantu's unlawful, unreasonable detention of Ms. Diaz] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).
48. The acts of Defendants Rios, Ramos, and Ruiz were also unreasonable under the circumstances when viewed objectively.
49. The acts of Defendant English Cantu violated clearly established rights under the Constitution and statutes. A reasonable person would have known that Ms. Diaz's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that Defendants' actions were violative of such rights.
50. The acts of Defendants were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as accosting and tasing a subject on whom he has no reasonable suspicion or probable cause beyond a Class C public intoxication offense, let alone subject to physical force. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Ms. Diaz's injuries.

## VIII.
## DAMAGES

51. Ms. Diaz repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.
52. Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.
53. Ms. Diaz's injuries were foreseeable and directly and proximately caused by the excessive force used against him.
54. Ms. Diaz is thus entitled to recover all actual damages allowed by law. The Defendant's conduct shows malice, wanton disregard, and reckless or callous indifference to Plaintiff's constitutional rights.
55. As a direct and proximate result of the occurrence underlying this lawsuit, Ms. Diaz suffered:
 a. Deprivations of her liberty; and
 b. Emotional distress, torment, and mental anguish.

56. Plaintiff seeks to recover reasonable attorney's fees and costs of court, pursuant to 42 U.S.C. § 1983 and § 1988.

## IX.
## ATTORNEY'S FEES

57. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

58. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court.

Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:   (361) 887-1031
Facsimile:    (361) 887-0903


___/s/ *Matthew S. Manning*_____
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
E: matt@wcctxlaw.com

ATTORNEY FOR ENRIQUETA DIAZ

9