IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ENRIQUETA DIAZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:23-CV-0060-AM |
| RAMSEY ENGLISH CANTU, *et al.*, | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss filed by the Defendants asserting various immunity defenses to suit in this matter. (ECF No. 40.) The Court heard oral argument on the Motion on February 2, 2024. Having considered the arguments raised, the facts presented, the relevant law, and for the reasons stated herein, the Motion is **DENIED**.

### I. BACKGROUND[1]

The imbroglio that began this action grew out of a dispute regarding certificates of obligation ("the certificates"), a normally dry area of municipal governance. Maverick County, Texas sought to issue the certificates to finance water and sewer improvements in an area straddling U.S. 277 north of Eagle Pass, Texas. The Plaintiff, a concerned citizen and former County Judge of Maverick County who opposed the project and its attendant debt, was the principal architect of a signature drive to force the issuance question to the voters in an upcoming election. By all accounts, and the admission of the Defendants, the Plaintiff gathered a sufficient number of signatures to succeed in her effort.

---

[1] In presenting the underlying facts of this case, the Court relies upon the information presented at the two-part preliminary injunction hearing, the transcripts of which are part of the record in this matter.

However, the Maverick County Commissioners Court, a body on which all four Defendants sit, decided to set aside the petition and decline to hold the election as required by Texas law. This action, which took place at the Commissioners Court meeting held on October 30, 2023, eventually led the Plaintiff to heckle the Defendants from the gallery. After a few exchanges, Defendant Cantu ordered the Plaintiff to be removed from the meeting and held in contempt. He later signed an Order of Contempt of Court, wherein the Plaintiff was sentenced to one day in jail. The Plaintiff was booked and released soon after, though she alleges she was held outside, in the rain, for three to four hours.

The Plaintiff now brings an action under 28 U.S.C. § 1983 alleging claims of false imprisonment and bystander liability.[2] (ECF No. 36.) The Defendants seek a dismissal of the amended complaint, citing qualified immunity for all Defendants and judicial immunity for Defendant Cantu.

## II. ANALYSIS

### a. Jurisdiction

As in all federal cases, jurisdiction is first. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982). The Court has previously issued a ruling as to jurisdiction, thereby mooting the Defendants' muddled and unclear complaints on the subject in the Motion to Dismiss. (ECF 8 at 4; ECF 40 at 2, 3.) Because of that, the Court will not discuss the matter further except to affirm its conclusion that it maintains subject-matter jurisdiction of

---

[2] The Plaintiff originally sought injunctive relief to block Maverick County from continuing with the debt issuance. (ECF No. 1.) The Court initially declined to issue a temporary restraining order, (ECF No. 8; *see also id.* at 3–4 (discussion on jurisdiction)), but scheduled a hearing on the motion for a preliminary injunction, whereupon it became clear that the Plaintiff's allegations held at least some merit. Accordingly, the Court appointed counsel.
At the continued preliminary injunction hearing, the Defendants represented to the Court that, if the certificates were not issued by the end of calendar 2023, the project would be mooted because the state matching funds would no longer be available. Near the close of evidence, the parties reached an agreement under which the Defendants would accept a preliminary injunction, memorialized by the Court in ECF No. 21. Because the deadline has now passed, the certificates are no longer a part of this action, though the injunction remains in place.

this action. (ECF 8 at 4); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015); *see also supra* note 2.

### b. Defendant Cantu

#### 1. Qualified Immunity

Defendant Cantu's argument as to qualified immunity boils down to the simple assertion that the Plaintiff brings suit against him for violation of Section 81.023 of the Texas Local Government Code, (ECF No. 40 at 11, 12), which does not itself provide for a private cause of action. (*Id.*) However, the Court reads the Amended Complaint differently.

The Plaintiff alleges, plainly, a violation of her Fourth Amendment rights. To wit, she alleges Defendant Cantu ordered her arrest without legal authority or probable cause. (ECF No. 36 at 4, 5.) Defendant Cantu's reading would flip the allegation on its head to obviate the inclusion of the Fourth Amendment in the pleading and result in a construction at odds with the plain text of the Amended Complaint. The Court declines the invitation for such a reading and will instead construe Count One of the Amended Complaint as asserting a Fourth Amendment claim.[3]

Under normal circumstances, once a defense of qualified immunity is raised, the burden shifts to the Plaintiff to show that "(1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time." *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023). However, in the wrongful arrest context, Defendant Cantu must demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances. *Douthit v. Jones*,

---

[3] Section 81.023 of the Texas Local Government Code can be said to vitiate a Fourth Amendment § 1983 claim by providing legal authority to arrest an individual. However, as well be discussed subsequently, it was not properly applied in this case and provides no safe harbor to Defendant Cantu.

619 F.2d 527, 534 (5th Cir. 1980); see also *Sullivan, et al. v. Garza Co. Sheriff's Office, et al.*, 2023 WL 9219306, at *12 (N.D. Tex. Nov. 3, 2023) (Bryant, J.).

For the purposes of qualified immunity, the right to be free from arrest absent lawful authority is clearly established. *See Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). In the Amended Complaint, the Plaintiff supplied an ample basis to negate, at least at this stage, the assertion of qualified immunity, including citations to caselaw supporting her assertions as to each qualified immunity element. (ECF No. 36 at 7, 8.) Accordingly, the burden now shifts back to Defendant Cantu to demonstrate that he acted on a good faith belief in his legal authority.

Defendant Cantu does not provide a position as to his good faith belief in the Motion to Dismiss and thus the Court finds he has waived any arguments on the question. However, for the sake of completeness, the Court will conduct the *Douthit* analysis regardless. Defendant Cantu's testimony before the Court, under questioning by the Plaintiff acting *pro se*, at the first preliminary injunction hearing is enlightening:

> Q. --what authority did you have at that time in Commissioners Court to issue a contempt of court and order that I be arrested?
>
> A. State law and local government code gives you – the authority to a county judge to offer or to place an individual in contempt of court for any reason that may be a disruption to the court.
>
> Q. Could you give me the code?
>
> A. I don't have it with me, but I can – I can attest that that has been researched; it has been reviewed in order to make sure that that is actually state law.
>
> Q. Mr. Cantu, are you referring to the code that stipulates that Commissioners Court can hold somebody in contempt? Is that the code you're referring to?
>
> A. **Commissioners Court may hold an individual, and a commissioner may make a motion to have an individual placed under contempt**, but the county judge is the ultimate authority that can make that decision.

4

(ECF No. 50 at 143–44) (emphasis added).

After initially offering a mistaken interpretation of the law, Defendant Cantu almost immediately corrects himself to say it is the Commissioners Court that must make a motion to hold someone in contempt. That answer illustrates, to the satisfaction of the Court, that Defendant Cantu knew what the correct interpretation of the law is and was relying on the statutory provision. In other words, the second half of Defendant Cantu's last answer in the quoted section, while facially an affirmation of his earlier answer, can in the context of his full statement be understood as nothing more than an attempt to hedge. His answers can also be read to confirm his belief in his own statutory power.[4] Accordingly, qualified immunity shall not attach.

### 2. Judicial Immunity

Judicial immunity is, rightly so, a very broad doctrine. *Bradley v. Fisher*, 80 U.S. 335 (1871). But it does not protect judges acting in the clear absence of jurisdiction. *Id.*; *McNeal v. Schaap*, 2023 WL 2938853, at *1 (N.D. Tex. Mar. 15, 2023) (Reno, J.). In other words, judicial acts are protected, but non-judicial acts are not. *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009).

As the Fifth Circuit has noted, judicial immunity is not controversial when applied to "paradigmatic" judicial acts—those taking place in court, pursuant to a controversy. *Id.* Drawing the line between those true and obvious judicial acts and those of a more pedestrian nature that happen to have been performed by a judge has proven to be incredibly difficult. *Forrester v. White*, 484 U.S. 219, 227 (1988). That maxim is no less true in this case.

In assessing an application of judicial immunity, a distinction must be drawn "between judicial acts and the administrative, legislative, or executive functions that judges may on occasion

---

[4] As opposed to the plenary power he would assert later.

5

be assigned by law to perform." *Id.* Although administrative functions are unquestionably necessary to the very functioning of courts, upon review, they have not been considered to be judicial acts. *Davis*, 565 F.3d at 222 (citing *Forrester*, 484 U.S. at 229). As the Fifth Circuit succinctly explained in *Davis*,

> Whether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. The relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, a court should look to the particular act's relation to a general function normally performed by a judge. This circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature:
> (1) whether the precise act complained of is a normal judicial function;
> (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;
> (3) whether the controversy centered around a case pending before the court; and
> (4) whether the acts arose directly out of a visit to the judge in his official capacity.
> These factors are broadly construed in favor of immunity.

*Id.* at 222–23 (cleaned up, quotations and citations omitted).

The application of those factors to the present case is complicated by the role of Defendant Cantu as County Judge, a somewhat antiquated office without contemporary equal in other states. Article 5 of the Texas Constitution, which governs the judiciary of the state, contains several provisions governing the duties of that role. Section 1 vests the judicial power of the state in, *inter alia*, the various commissioners courts of the state. Section 15 requires a County Judge to be "well informed in the law of the State," while Section 17 vests in the officeholder authority over misdemeanor cases.[5] Additionally, Section 16 provides county judges with the power to enforce their jurisdiction by appropriate action and to preside over commissioners court meetings. Similarly, the County Judge is vested with original probate jurisdiction by Section 32.001 of the

---

[5] This authority is also found in Art. 4.07 of the Texas Code of Criminal Procedure.

6

Texas Estates Code in those counties that do not have a statutory probate court or county court at law exercising probate jurisdiction.[6] The authority and responsibilities of the County Judge extend to other areas as well, to include acting as the presiding officer of the Commissioners Court and exercising supervision over elections in the county. *County Judges in Texas*, https://texapedia.info/local-government/county-judge/ (last visited Feb. 3, 2024). In short, County Judges in Texas play a role that is both judicial and administrative—requiring careful attention to the analytical factors.

The Court will begin with the first factor, whether the complained-of act is a normal judicial function. Contempt citations are undoubtably a normal judicial function. To be sure, judges must be empowered to enforce decorum in their courtrooms and such other places as they may preside. However, this relatively cut-and-dry question is complicated by the relevant Texas statute governing contempt in the Commissioners Court setting. Section 81.023 of the Texas Local Government Code provides that the "commissioners court shall punish a person held in contempt by a fine of not more than $25 or by confinement for not more than 24 hours." That statute casts a different light on the contempt powers of a County Judge when presiding over a Commissioners Court meeting – they don't exist. Contempt is, quite clearly, a normal judicial function, but when a County Judge does not possess contempt power in the context in which it was exercised, it can hardly be said to be a normal judicial function. In other words, the acts by Defendant Cantu are explicitly barred by statute – he does not have the authority to unilaterally impose a contempt

---

[6] Maverick County does not have a statutory probate court or county court at law exercising probate jurisdiction. Thus, Defendant Cantu is the presiding officer of probate actions in Maverick County.

order. Such orders must come from the Commissioners Court as a whole. Because of that, the first factor weighs against judicial immunity, though only slightly.[7]

The Court will now turn to the second and fourth factors together for the purposes of analysis – whether the events in this case happened in an official, judicial place while Defendant Cantu was acting in an official, judicial capacity.

As discussed previously, it is an official duty of a County Judge generally, and Defendant Cantu specifically, to preside over meetings of the Commissioners Court. It is undisputed that the meeting in question took place in the customary place and manner. Therefore, as to the second factor, the Court must determine whether the Commissioners Court is a court such as to afford immunity. As to the fourth factor, the question is whether Defendant Cantu was acting in a judicial capacity during the meeting.

Surely, there is no dispute that Defendant Cantu acts in a judicial capacity when adjudicating misdemeanors or probate matters in Maverick County, but whether he is acting as a judge when presiding over the Commissioners Court, and whether that body is in fact a court, are slightly thornier questions. Defendant Cantu points to a quotation from the Supreme Court in *Avery v. Midland County, Tex.*, which states, "[Commissioners Courts] cannot easily be classified in the

---

[7] The Court is mindful of two subsidiary arguments not raised by Defendant Cantu that could weigh in favor of immunity on this factor. First, there is a colorable argument that Defendant Cantu was acting on behalf of the Commissioners Court when he issued the contempt citation. Second, Defendant Cantu was acting in pursuit and defense of his authority to enforce decorum in the Commissioners Court meeting. Neither argument is availing. The contempt order issued against the Plaintiff was issued by Defendant Cantu in his own name, not on behalf of the Commissioners Court. It is also clear from the video of the incident that Defendant Cantu is acting on what he believes to be his own authority—authority he does not have by explicit statutory command. For example, Defendant Cantu states, "…I will hold you in contempt. I will hold you in contempt." Later in the video, Defendant Cantu can be heard ordering deputies, on his own authority, to arrest and remand the Plaintiff to the county jail. He then makes lengthy, passionate comments on the subject. Clearly, therefore, Defendant Cantu is exercising power he does not have on his own behalf.

As to the second argument, the Court is sympathetic to Defendant Cantu's need to preserve order in the Commissioners Court meetings, which can grow raucous over even the most mundane affairs of governance. However, that power is strictly reserved for the Commissioners Court acting *as a body*. If the Texas legislature has intended to grant contempt powers to the County Judge in the meeting context, in addition to the Commissioners Court as a whole, it would have so stated.

neat categories favored by civics texts," before going on to characterize their duties as some parts administrative, some parts legislative, and other parts judicial. 390 U.S. 474, 482 (1968). This line has been adopted and incorporated repeatedly by the Fifth Circuit and the various Texas state courts, creating the impression of a strong body of law supporting that principle. But that line contains no analysis whatsoever and the many citations add none later, leaving the Court puzzled as to what the judicial functions of Commissioners Courts actually are. The Supreme Court has made clear that nomenclature is not the test, so without an exposition on the judicial duties of Commissioners Courts, the principle, despite its lengthy list of citations, is unconvincing. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) ("The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself…").

Other courts considered a similar body with similar powers have found against judicial immunity. In *Lynch v. Johnson*, the Sixth Circuit considered judicial immunity for a county Fiscal Court, the managing body for county governance in Kentucky at the time. 420 F.2d 818 (6th Cir. 1970). In concluding the body was not judicial in nature, the court looked to the duties being performed and found them to be entirely legislative and administrative. *Id.* at 820. Thus, judicial immunity could not attach to the body or its presiding officer because it was not a court. *Id.* That conclusion was bolstered by a citation to *Ex parte Rowland*, where the Supreme Court held that an Alabama body similar to the one at issue here, "while called a 'court,' is in fact the board of officers through whom the affairs of the county are managed. The duties of this board, at least so far as this case is concerned, are administrative, not judicial." 104 U.S. 604 (1881).

The agenda for the meeting in question makes clear the Commissioners Court was not acting in a judicial capacity.[8] Among the items slated for consideration were installation of stop

---

[8] As the agenda is an item of public record, the Court takes judicial notice of and includes it hereto as Appendix A. *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013).

9

signs at intersections and various community improvement and management items. This appropriately demonstrates that the Commissioners Court was not acting as a judicial body, but one concerned with the governance and administration of the county. It stands to reason then that because the Commissioners Court is not a judicial body, the presiding officer of that body cannot be acting in a judicial capacity. Accordingly, the second and fourth factors weigh against immunity.

Finally, the Court considers the third factor, whether the incident complained of occurred pursuant to a case pending before the court. Because the Court has concluded the Commissioners Court was not acting as a court during the meeting in which the Plaintiff was arrested as there was no judicial controversy before it, the arrest could not be part of, or incident to, that controversy. Thus, the third factor weighs against judicial immunity. Having considered all factors and finding that none are in favor of affording Defendant Cantu judicial immunity, it shall not attach here.

At oral argument on the Motion, counsel for Defendant Cantu was unable to point to a legal basis for Defendant Cantu to issue a contempt order himself. (ECF No. 61 (transcript forthcoming)). Instead, in effect, counsel asserted an unfettered power without any due process requirement that is untethered from the statutory or common law. At that time, the Court characterized such a power as dictatorial—a characterization which counsel accepted with the caveat that the law does not provide a remedy for all wrongs. The Court can scarcely countenance, and can find no support for, such a broad power.

### c. Defendants Ramos, Ruiz, and Rios

#### 1. Bystander Liability

Defendants Ramos, Ruiz, and Rios first move to dismiss the Plaintiff's Amended Complaint against them on the basis that bystander liability does not apply to them. (ECF No. 40

10

at 12.) They rely on a quotation from *Whitley v. Hanna*, "an officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[9] 726 F.3d 631, 646 (5th Cir. 2013). In their brief, however, the Defendants add the words "law enforcement" to the beginning of the quote, though not in quotation marks, to argue for a narrower interpretation. (ECF No. 40 at 12.) The Plaintiff counters that the Fifth Circuit repeatedly uses the word "officer" and not "law enforcement officer" to discuss the appropriate standard, thereby leaving the door open to a more expanded reading. (ECF No. 57 at 8–9.)

The Plaintiff's logic is persuasive. The Court has long held the view that the Fifth Circuit's words have meaning. If the Fifth Circuit had wished to narrow the scope of bystander liability to law enforcement officers only, then it would have so stated, or may so state in the future; that the cases use only the word 'officer' to the exclusion of 'law enforcement' and is a compelling rationale.[10] *See also Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (affirming the bystander liability standard using only the word "officer.").

Having concluded that the bystander liability standard is not as narrow as the Defendants argue, the Court turns to the question of whether Defendants Ramos, Rios, and Ruiz are "officers" within the meaning of the standard. The Court is of the view that they are. The Supreme Court has characterized local officers as officers. *Sailors v. Board of Ed. of Kent County*, 387 U.S. 105, 111 (1967). It can even be said that the Defendants are state officers, as counties are subdivisions of

---

[9] The Defendants do not argue a pleading deficiency as to an element, but rather inapplicability. Accordingly, the Court will not discuss the elements further.

[10] Further compelling this conclusion is footnote 11 in *Whitley*, in which the Fifth Circuit indicates that while bystander liability most often arises in the law enforcement excessive force context, other constitutional violations may support a theory of bystander liability, thereby explicitly leaving the door open to other factual scenarios. 726 F.3d at 646 n.11. Given the facts of this case, the Court believes a case of bystander liability is at the very least *prima facie* supported.

state power and creatures of the state constitution in Texas. TEX. CONST. art. V, § 1. Accordingly, the bystander liability claim in the Amended Complaint will stand.

### 2. Qualified Immunity

The Court now turns to the qualified immunity arguments of Defendants Ramos, Rios, and Ruiz. For the same reasons as discussed with respect to the qualified immunity as to Defendant Cantu, the Court finds that qualified immunity shall not attach; namely, the right to be free from arrest absent lawful authority is clearly established. *See Freeman*, 483 F.3d at 411. They too were not acting in a judicial or legislative capacity, but as administrative officers.

### d. Miscellaneous Defenses

Finally, the Court will address two arguments the Defendants first raised in reply. First, Defendant Cantu takes the affirmative step of asserting Eleventh Amendment immunity and asserting a failure by the Plaintiff to plead around the *Monell* bar. (ECF No. 60 at 3–5 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). The Fifth Circuit is expressly clear that a defense of state sovereign immunity under the Eleventh Amendment is affirmative and must be pled by defendants. *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023) (Oldham, J.) ("But state sovereign immunity is an affirmative defense, and plaintiffs are not required to anticipate or plead around affirmative defenses. Rather, it [is a defendant's] obligation to raise the defense." (cleaned up)).[11] Arguments raised for the first time in a reply brief are waived. *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003). Accordingly, the Court finds the Defendants have waived any arguments as to Eleventh Amendment sovereign immunity.

---

[11] During argument, counsel for Defendant Cantu pointed the Court to *Warnock v. Pecos County, Tex.*, where the Fifth Circuit held that "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity." 88 F.3d 341, 343 (5th Cir. 1996). There are two issues with that contention, however. First, the Court does not believe Defendant Cantu was acting in a judicial capacity during the incident in question for the reasons previously stated. Second, the Fifth Circuit has recently held in *Jackson* that an exception exists for violations of federal law. 82 F.4th at 367. Therefore, even if it were applicable to Defendant Cantu, sovereign immunity does not apply here because the Plaintiff has sufficiently alleged a constitutional violation to escape the bar.

Even if the Court were to consider the argument, however, it would be unavailing. To escape the Monell bar, a plaintiff must demonstrate three elements: (1) an official policy or custom, (2) attributed to a policymaker, (3) that was the moving force behind her constitutional injury. *Pineda v. City of Houston*, 291 F. 3d 325, 328 (5th Cir. 2002). The video of the incident in question, offered at the first preliminary injunction hearing as Plaintiff's Exhibit No. 2, shows Defendant Cantu stating an intention to "move this county forward," "like it or not." Those statements show, to the satisfaction of the Court, and when taken in conjunction with the Defendants' collective actions, or lack thereof, in response to the Plaintiff's submission of the voter petition, that there was an official policy and pattern on the part of the Defendants: that they were going to move forward, "by hook or by crook," with the debt issuance, no matter who's rights needed to be trampled on in the process. (ECF No. 58 at 50.) Because the policy of the Defendants effected a constitutional injury against the Plaintiff, even if the Defendants had properly pled sovereign immunity, it would not attach here.

Second, Defendant Cantu alleges legislative immunity as a defense. Similar to the sovereign immunity argument, Defendant Cantu failed to raise legislative immunity in his initial Motion and it is therefore waived. *Lockett*, 319 F.3d at 684 n.16. However, the argument substantively fails, as well. The Court does not agree with the Plaintiff's assertions that Defendant Cantu was acting in a legislative capacity during the incident at issue. To adopt the Plaintiff's position would be to endorse the view that Defendant Cantu held some sort of lawful authority to engage in the acts subject to this litigation. For the reasons discussed herein regarding judicial

immunity, he did not. By virtue of the statutory text, Defendant Cantu did not have the authority to hold the Plaintiff in contempt, either as a judge or as a legislator, so he cannot claim immunity.[12]

The case Defendant Cantu cites in support of his legislative immunity argument, *Bogan v. Scott-Harris*, concerned the actions of a city council acting as a body. 523 U.S. 44 (1998). If the Commissioners Court had, as a unit, held the Plaintiff in contempt, legislative immunity would be proper under its holding. *See supra* note 3. But that is not what happened here. Defendant Cantu acted in an extra-statutory manner and usurped powers for himself that he is not entitled to. The subject city council in *Bogan* undertook acts that, while alleged to be discriminatory and retaliatory, were without question within their legal bailiwick. The same cannot be said of Defendant Cantu's acts here.

### III. CONCLUSION

For the reasons discussed herein, the Defendants' Motion to Dismiss the Amended Complaint is in all things **DENIED**.

SIGNED and ENTERED on this 5th day of February 2024.

_____
ALIA MOSES
Chief United States District Judge

---

[12] If Defendant Cantu could act in the plenary manner that he claims, including on behalf of the Commissioners Court, there would be no need for a commissioners court at all—he could simply act on his own to govern the county.