1     UNITED STATES DISTRICT COURT
      WESTERN DISTRICT OF TEXAS
2       DEL RIO DIVISION

3 ENRIQUETA DIAZ,     )
             )
4   Plaintiff,    )
             )
5    v.       ) Docket No. 2:23-cv-00060-AM
             )
6 RAMSEY ENGLISH CANTU,  ) Del Rio, Texas
 ROXANNA RIOS, OLGA RAMOS, ) February 2, 2024
7 and ROBERTO RUIZ,   )
             )
8   Defendants.   )
 _____)
9      TRANSCRIPT OF MOTION HEARING
10    BEFORE THE HONORABLE ALIA MOSES
     CHIEF UNITED STATES DISTRICT JUDGE
11
 A P P E A R A N C E S:
12
 FOR THE PLAINTIFF:
13 Matthew Steven Manning
 Webb, Cason & Manning, P.C.
14 710 Mesquite St.
 Corpus Christi, TX 78401
15
 FOR THE DEFENDANTS:
16 Scott M. Tschirhart
 Denton Navarro Rodriguez Bernal Santee & Zech, PC
17 2500 W. William Cannon Drive, Suite 609
 Austin, TX 78745
18
 COURT REPORTER:
19 Chris Poage, CRR, RMR
 United States Court Reporter
20 262 West Nueva Street, Rm. 1-426
 San Antonio, TX  78207
21 Telephone:  (210) 244-5036
 chris_poage@txwd.uscourts.gov
22
 Proceedings reported by stenotype, transcript produced by
23 computer-aided transcription.

24

25

Motion Hearing - February 2, 2024

1      *(9:17 a.m.)*

2           THE COURT:  All right.  This is DR:23-CV-60, Enriqueta

3      Diaz v. Ramsey English Cantu, Roxanna Rios, Olga Ramos and

4      Roberto Ruiz.

5        Announcements.

6           MR. MANNING:  Good morning, Your Honor.  Matt Manning

7      for plaintiff, Enriqueta Diaz.

8           THE COURT:  Okay.

9           MR. TSCHIRHART:  Good morning, Your Honor.  Scott

10     Tschirhart for the defendants.

11          THE COURT:  All right.  Mr. Tschirhart, this is your

12     motion.

13          MR. TSCHIRHART:  All right.  At the --

14          THE COURT:  Yes.  At the podium.

15          MR. TSCHIRHART:  Thank you, Your Honor.

16       Good morning.  After 5:00 last night, Your Honor, we

17     received notice that there was some sort of a video.

18          THE COURT:  Well, Mr. Tschirhart, this video got

19     played at a previous hearing.  So it's been around for a while.

20          MR. TSCHIRHART:  I understand.

21          THE COURT:  So the Court has seen it.

22          MR. TSCHIRHART:  I understand that, Your Honor.  And

23     -- but the purpose of this hearing is to test the pleadings.

24     It's a 12(b)(1), 12(b)(6) motion.

25          THE COURT:  Mr. Tschirhart, are you coming to complain

Motion Hearing - February 2, 2024

1  or to argue your motion?

2      MR. TSCHIRHART:  I've come in to object to any

3  evidence that --

4      THE COURT:  It's already been -- it was already

5  evidence, Mr. Tschirhart.  What happened was, it came on a

6  flash drive that appeared to have malware.  So we had to get a

7  clean computer to play it on at the last hearing when it was

8  admitted, the part that was admitted.  And so we weren't able

9  to hold on to that particular flash drive.

10     And so the only reason was because we weren't able to keep

11 it, we were noticing everybody about the video.  But it has

12 been admitted in evidence in the previous hearings.

13     MR. TSCHIRHART:  I understand, Your Honor.

14     THE COURT:  So that you didn't see it is not an issue

15 of whether or not it should come in.

16     MR. TSCHIRHART:  It's not that, Your Honor.  My

17 objection is specific --

18     THE COURT:  It's already been admitted as evidence in

19 a previous hearing, Mr. Tschirhart.

20     MR. TSCHIRHART:  I understand, Your Honor.  May I

21 state my objection, please?

22     THE COURT:  No.  I want you to argue your motion.

23 It's already evidence.  The Court's already seen it,

24 Mr. Tschirhart.

25     MR. TSCHIRHART:  Your Honor, there are two different

Motion Hearing - February 2, 2024

1  kinds of claims that are made in this case:  Official capacity

2  claims and individual capacity claims.  We contend that the

3  official capacity claims should be dismissed against Judge

4  English Cantu because he has 11th Amendment immunity.

5          THE COURT:  Are you talking about sovereign immunity?

6          MR. TSCHIRHART:  Yes, I am, Your Honor.

7          THE COURT:  That's what you raised in your reply.  So

8  it's waived.  You can't raise those for the first time on a

9  reply.

10          MR. TSCHIRHART:  11th Amendment immunity, Your Honor,

11  can be --

12          THE COURT:  Sovereign immunity is waived if it's not

13  raised at the initial brief.

14          MR. TSCHIRHART:  The Fifth Circuit has said it can be

15  raised any time, including --

16          THE COURT:  Counsel, if that -- if sovereign immunity

17  applied, you would never have a 1983 claim or in anybody in an

18  official capacity, ever.

19          MR. TSCHIRHART:  In this particular instance, though,

20  the Fifth Circuit has been very clear that judges enjoy -- in

21  Texas enjoy 11th Amendment immunity from 1983 claims.

22          THE COURT:  So that you're saying they can go in and

23  violate anybody's rights and they could never be sued?

24          MR. TSCHIRHART:  I'm saying --

25          THE COURT:  Neither could a county?

Motion Hearing - February 2, 2024

```
 1            MR. TSCHIRHART:  A parallel would be a Bivens suit
 2   against --
 3            THE COURT:  I get it.  But Bivens is a parallel for
 4   federal officials.
 5            MR. TSCHIRHART:  And it shows -- what I'm trying to do
 6   as a parallel, Your Honor, is to demonstrate --
 7            THE COURT:  Mr. Tschirhart, just answer my questions.
 8      So based on your theory, according to what Fifth Circuit is
 9   saying, a county official who violated anybody's rights would
10   always be immune from suit under sovereign immunity?
11            MR. TSCHIRHART:  Specifically a judge, Your Honor.
12            THE COURT:  Okay.  So you're talking about, in which
13   capacity, though?  Are you talking about in a judicial
14   capacity?
15            MR. TSCHIRHART:  Official capacity, Your Honor.
16            THE COURT:  No.  I'm not talking about -- I'm not
17   saying official, Mr. Tschirhart.  Is it judicial,
18   administrative or legislative?
19            MR. TSCHIRHART:  He acted in his judicial capacity.
20            THE COURT:  So you're -- so you're saying it's
21   sovereign immunity based on judicial immunity?
22            MR. TSCHIRHART:  I'm saying sovereign immunity based
23   on 11th Amendment immunity, Your Honor.
24            THE COURT:  So, Mr. Tschirhart, you're saying a county
25   official could never be held accountable under 1983?
```

Motion Hearing - February 2, 2024

1        MR. TSCHIRHART:  Of course, that's not true, Your
2 Honor.
3        THE COURT:  Of course, it's not true, Mr. Tschirhart.
4 But that is technically what you're arguing.
5        MR. TSCHIRHART:  What I'm arguing is that a judge
6 cannot -- is immune from --
7        THE COURT:  Okay.  So let's start with judicial
8 immunity, because that was the claim you raised in your motion.
9 Let's start with that.
10        MR. TSCHIRHART:  All right.  Judge Cantu's entitled to
11 judicial immunity because this was a proceeding that he was
12 proceeding -- that he was presiding over.  He held her in
13 contempt.  That is a normal judicial function.
14        THE COURT:  Of county commissioners' court, not the
15 judge solely.
16        MR. TSCHIRHART:  I understand that there's a statute
17 out there that talks about a commissioners' court holding
18 someone in contempt.  That statute is for a different purpose,
19 Your Honor.
20        THE COURT:  For what purpose, then, Mr. Tschirhart?
21        MR. TSCHIRHART:  Because commissioners' courts issue
22 resolutions and they issue orders.  And to enforce those
23 orders --
24        THE COURT:  But don't you need all of commissioner
25 court to issue those resolutions and those orders?

Motion Hearing - February 2, 2024

1    MR. TSCHIRHART:  You do, indeed, Your Honor.

2    THE COURT:  Okay.  So the question becomes, if he's --

3    MR. TSCHIRHART:  Those -- I apologize, Your Honor.  I

4  don't want to speak over you.

5    THE COURT:  No.  No.  Go ahead.  Go ahead.

6    MR. TSCHIRHART:  To enforce those particular edicts,

7  the commissioners' court could set a meeting where they would

8  take up this kind of a contempt proceeding.

9    THE COURT:  Right.

10    MR. TSCHIRHART:  But it would be taken up by the

11  entire commissioners' court.

12    THE COURT:  Right.

13    MR. TSCHIRHART:  Well, this is a direct contempt.

14    THE COURT:  Okay.  Where does he draw that authority?

15    MR. TSCHIRHART:  I apologize, Your Honor?

16    THE COURT:  Where does he draw that authority to

17  have -- to issue contempt orders like that?  From what -- from

18  what provisions?

19    MR. TSCHIRHART:  Your Honor, all courts have --

20    THE COURT:  Yes.  In our judicial capacity, we do.

21    MR. TSCHIRHART:  Absolutely, Your Honor.

22    THE COURT:  So the question is, is it a summary

23  contempt situation?  Is that what you're saying?

24    MR. TSCHIRHART:  It would be a summary contempt --

25    THE COURT:  Okay.  So what findings --

1          MR. TSCHIRHART:  -- in federal court.

2          THE COURT:  Okay.  But I'm saying, the analogous

3    provision.

4          MR. TSCHIRHART:  It's analogous.  Yes, Your Honor.

5          THE COURT:  All right.  So what findings would need to

6    be made under that, Mr. Tschirhart?

7          MR. TSCHIRHART:  No findings whatsoever.

8          THE COURT:  Oh, yes.  Even federal court has to make

9    findings as to summary contempt.

10         MR. TSCHIRHART:  Federal courts do, Your Honor --

11         THE COURT:  So what you're saying --

12         MR. TSCHIRHART:  -- but a judge -- witnesses contempt

13   before him --

14         THE COURT:  Okay.  But stop.  Okay.  Stop.  There were

15   no witnesses before him.  If you watch the video, you'd know

16   that.  There weren't any witnesses, number one.

17       Number two, my question to you is, there has to be findings

18   made on the record.  You're saying that this is some type of

19   inherent authority that a county judge has.  Where would that

20   inherent authority come from, and what kind of findings need to

21   be made on the record?

22         MR. TSCHIRHART:  Do not believe that there are any

23   findings that need to be made on the record, Your Honor.

24         THE COURT:  There has to be, Mr. Tschirhart, beyond

25   contempt of court.  There has to be.  It's a due process

Motion Hearing - February 2, 2024

```
 1  matter.  You've got to give the person an opportunity to be
 2  heard.
 3            MR. TSCHIRHART:  I understand, Your Honor.  This is a
 4  direct contempt.
 5            THE COURT:  I understand that.  But even with direct
 6  contempt, there's due process considerations.  And you've got
 7  to give a person a chance to defend themselves, that -- even if
 8  it happened in your presence or view.  And there has to be
 9  findings made.
10     So what would those findings be?
11            MR. TSCHIRHART:  I don't think there are any findings
12  that need to be made on a direct contempt in state court, Your
13  Honor.
14            THE COURT:  And so then you better tell me what
15  authority you have for that statement, Mr. Tschirhart, because
16  even federal courts don't have that kind of plenary power
17  without findings.
18            MR. TSCHIRHART:  Federal courts certainly must make
19  those findings, Your Honor.
20            THE COURT:  You're right.  And so every judge has to,
21  Mr. Tschirhart.  There is no dictator-type authority to make
22  such contempt findings without any due process and the ability
23  to defend oneself.
24            MR. TSCHIRHART:  I know of no statutory authority.
25            THE COURT:  So what you're saying, Mr. Tschirhart, is
```

Motion Hearing - February 2, 2024

```
 1  that any county judge -- let's not talk about Judge English.
 2  We'll talk about generally county judges.  If they're in the
 3  middle of a meeting, they can order somebody to be put in jail
 4  for 24 hours and fined without any findings, without anything
 5  other than, I find you in contempt?
 6          MR. TSCHIRHART:  In this case the plaintiff --
 7          THE COURT:  I'm not talking about this case.  I'm
 8  talking generally, just generally under the law.
 9          MR. TSCHIRHART:  -- hypothetical.
10          THE COURT:  You're saying that's all that's required?
11          MR. TSCHIRHART:  The judge has to be able to find the
12  person in contempt.
13          THE COURT:  Okay.  But I'm just saying, to find a
14  person in contempt, a county judge in the state of Texas, all
15  they have to do is say, I find you in contempt of court.  I
16  sentence you to 24 hours in jail and impose whatever amount of
17  fine, period?
18          MR. TSCHIRHART:  I don't -- I don't believe that.  I
19  think you have them removed from the courtroom.
20          THE COURT:  Okay.  So they can be removed, but they
21  can't be sentenced to a term of jail, is what you're saying?
22          MR. TSCHIRHART:  I don't know about sentencing them to
23  anything without having an evidentiary hearing, Your Honor.
24          THE COURT:  Okay.  So but in this -- okay.  So now
25  let's talk about this case.  The person was sentenced, the
```

Motion Hearing - February 2, 2024

1  plaintiff was sentenced to jail time, 24 hours, without -- so
2  what findings needed to have been made for that?
3            MR. TSCHIRHART:  I don't know that there are any
4  findings that need to be made for that, Your Honor.
5            THE COURT:  There has to be.  It's called "due
6  process."  You're going to take somebody's liberty away,
7  Mr. Tschirhart.  There has to be some findings that have to be
8  made.  You cannot just say, I find you in contempt.  Therefore,
9  I sentence you to 24 hours in jail, without any type of due
10 process.  That's what you're arguing.
11           MR. TSCHIRHART:  Your Honor, I understand your
12 argument.  What I'm --
13           THE COURT:  No.  I understand your argument.  I'm just
14 saying, I don't agree with it, Mr. Tschirhart.
15           MR. TSCHIRHART:  What I'm saying is, 1983 doesn't
16 reach to this because the Court has judicial immunity.
17           THE COURT:  Okay.  But that presumes that they have
18 authority to issue a contempt order to begin with.  Okay.
19 You're telling me that authority comes just because it's a
20 direct contempt, without any due process requirements attached
21 to it, is what you're telling me, Mr. Tschirhart.
22           MR. TSCHIRHART:  I'm telling you that that is a
23 judicial action.
24           THE COURT:  No.  I'm telling -- I'm asking you a
25 direct question.

Motion Hearing - February 2, 2024

1    So let's put it this way, Mr. Tschirhart.  And I'm not
2   finding you in contempt.  Don't get me wrong.  I'm not.  Okay?
3       So what you're telling me is that right now I could just
4   say, Mr. Tschirhart, you're in contempt.  Go with the marshals.
5   You're in jail for 24 hours.  You have a thousand dollar fine.
6       You're telling me I could do that, if I were a county
7   judge, without any type of findings, any type of allowing you
8   to defend yourself, to ask, hey, what did I do?
9       There's a difference between saying, you're removed from
10  the meeting because you're causing problems, but there's a
11  difference when you order them to go to jail.
12          MR. TSCHIRHART:  I understand that, Your Honor.
13          THE COURT:  Okay.  So in this particular case, the
14  plaintiff was ordered to go to jail 24 hours and actually went
15  to the sheriff's office and was held.  So you're talking about
16  two different remedies for the contempt matter.
17      Let's talk about when you order somebody to jail.  You're
18  saying that can be done without any due process.
19          MR. TSCHIRHART:  I do not believe it can be done
20  without any due process.
21          THE COURT:  Okay.  Well, if that's what happened, what
22  authority -- what findings would have to be made?
23          MR. TSCHIRHART:  Well, I don't believe that 1983
24  reaches to judicial decisions, Your Honor.
25          THE COURT:  It does to some judicial decisions,

Motion Hearing - February 2, 2024

1  Mr. Tschirhart.  And the judicial decisions have to be based in

2  law that grant that authority.  And you can't seem to point to

3  any.

4          MR. TSCHIRHART:  I can't find any authority that says

5  that, and I can't find any authority, Your Honor, that says

6  certain findings have to be made.

7          THE COURT:  But that doesn't mean that they don't have

8  to, because it's called "due process."

9          MR. TSCHIRHART:  I understand, Your Honor.

10          THE COURT:  So if you're going to sentence somebody to

11  a term of jail, okay, they have the right to counsel.  They

12  have the right to allocute.  They have the right to make an

13  argument.  If none of that is done, how is that a valid

14  sentence?

15          MR. TSCHIRHART:  Your Honor, under that hypothetical

16  we wouldn't have one.

17          THE COURT:  Okay.  You need to understand that in this

18  case that was the sentence.  Okay?

19          MR. TSCHIRHART:  However, Your Honor, that sentence

20  was not carried out.  The judge ordered her released as soon

21  she was --

22          THE COURT:  Not until -- not until she was at the --

23  at the sheriff's office.  I think -- did you get a chance to

24  view -- to read the transcripts from the last hearings?

25          MR. TSCHIRHART:  I read the transcripts that were not

Motion Hearing - February 2, 2024

```
 1  sealed.  I have perused the transcripts that were sealed --
 2           THE COURT:  Okay.
 3           MR. TSCHIRHART:  -- because I did not receive them
 4  until yesterday, Your Honor.
 5           THE COURT:  Correct.  Because my court reporter was
 6  asking me about releasing them, and I told her that she could
 7  release it to the attorneys under seal.  And that's fine.
 8           MR. TSCHIRHART:  That's right, Your Honor.
 9           THE COURT:  So I did authorize that.  But that just
10  barely happened.
11     So -- but the bottom line is that it would be very --
12  actually would have been very helpful if you had seen the video
13  that was admitted into evidence.
14     But the question becomes, she ended up being called and
15  going to the sheriff's office?
16           MR. TSCHIRHART:  That's correct, Your Honor.
17           THE COURT:  Okay.  So she was held by the sheriff?
18           MR. TSCHIRHART:  That's correct, Your Honor.
19           THE COURT:  Okay.  The order was later rescinded, but
20  it was issued, and she was required to go to -- again, with the
21  sheriffs.  So there was a certain degree of restraint.
22           MR. TSCHIRHART:  I don't argue with that, Your Honor.
23           THE COURT:  Okay.  So my question to you is, so that
24  would be a criminal sanction at that point, right?
25           MR. TSCHIRHART:  I believe that's correct, Your Honor.
```

Motion Hearing - February 2, 2024

```
 1          THE COURT:  So for a criminal sanction, you need some
 2   due process.  What is the due process requirement for contempt
 3   that ends up with a criminal sanction?
 4          MR. TSCHIRHART:  I do not know, Your Honor.
 5          THE COURT:  Well, wouldn't that be required in this
 6   case?
 7          MR. TSCHIRHART:  I don't believe 1983 --
 8          THE COURT:  That's not my question to you.
 9          MR. TSCHIRHART:  I understand, Your Honor.
10          THE COURT:  My question to you, wouldn't there be some
11   due process required in that type of a case?
12          MR. TSCHIRHART:  I would certainly think that any time
13   anyone's liberty is restrained, due process is necessary.  Yes,
14   Your Honor.
15          THE COURT:  Okay.  All right.  So let's talk
16   hypothetically then, Mr. Tschirhart, not this particular case.
17   Anybody who is restrained and has a criminal sanction on them,
18   okay, without due process, what you're telling me is that any
19   county judge in the state of Texas could do something like that
20   without any authority, any due process, and they would be
21   immune from suit under 1983 because of sovereign immunity.
22   That's what your argument is.
23          MR. TSCHIRHART:  I am arguing that in this particular
24   case --
25          THE COURT:  No.  I told you -- I'm talking generally,
```

Motion Hearing - February 2, 2024

1   Mr. Tschirhart.  Generally, what you're saying is that's the

2   law of the Fifth Circuit that would allow any county judge in

3   the state of Texas to do that?

4        MR. TSCHIRHART:  I'm saying that I do not believe 1983

5   reaches --

6        THE COURT:  That's not what I'm asking you,

7   Mr. Tschirhart.  You don't -- you don't want to answer my

8   question.  That means that you would have to agree with me.  If

9   you avoid my questions, that sends a lot of red flags up.  I

10  would suggest you answer my questions, Mr. Tschirhart.

11       MR. TSCHIRHART:  I'm happy to answer your questions.

12       THE COURT:  Well, you -- okay.

13       MR. TSCHIRHART:  I think any county judge in the state

14  of Texas has judicial immunity.

15       THE COURT:  Okay.  So my question is, based on your

16  argument, okay, any county judge in the state of Texas could

17  wrongfully order a person to be held and their freedom to be

18  taken, enter a criminal sanction and be totally immune from any

19  1983 claim under sovereign immunity.  That's your -- that's

20  your ultimate argument.

21       MR. TSCHIRHART:  My ultimate argument is, any county

22  judge who is presiding over a meeting like this, that is

23  being --

24       THE COURT:  Okay.  So the answer to my question is

25  yes, because you won't answer it.  That's -- I've asked it

Motion Hearing - February 2, 2024

1    about five times, Mr. Tschirhart.  You will not ask [sic] it.

2    I'm not asking about judicial immunity.  I'm asking about

3    sovereign immunity, which you're trying to raise as a bar.

4    Okay?  You don't answer my question based on my hypothetical.

5    That means that I'm right.  I've asked it five times.  You've

6    refused to answer it.

7        So go to your next point, Mr. Tschirhart.

8            MR. TSCHIRHART:  May I respond, Your Honor?

9            THE COURT:  You won't answer my question.  What's

10   there to respond to?

11           MR. TSCHIRHART:  I will answer your question, Your

12   Honor.

13           THE COURT:  Responding to say that somebody has

14   judicial immunity; therefore, they can't be sued under 1983, is

15   not an answer because that's not my question.

16           MR. TSCHIRHART:  May I answer your question, Your

17   Honor?

18           THE COURT:  Do it.

19           MR. TSCHIRHART:  Judges in the state of Texas are

20   entitled to 11th Amendment immunity.  That's black letter law.

21           THE COURT:  So my question is this, Mr. Tschirhart.

22   You still didn't answer it, still didn't answer it.  And let me

23   ask it again.  And if you still don't answer it, I'm going to

24   take it that I'm absolutely right.

25       If a county judge in whatever capacity they're sitting in

Motion Hearing - February 2, 2024

 1  orders somebody to be jailed without any due process, violates
 2  their due process rights, they can be immune from any type of
 3  1983 lawsuit, according to you, because of sovereign immunity?
 4          MR. TSCHIRHART:  If they're acting in their judicial
 5  capacity, yes.
 6          THE COURT:  Okay.  So if they're acting in a
 7  legislative capacity, what's the answer to the question?
 8          MR. TSCHIRHART:  They're absolute -- county
 9  commissioners are -- and county judge are absolutely immune to
10  any acts they take in their legislative capacity, Your Honor.
11          THE COURT:  Okay.  I said "administrative."  I didn't
12  say "legislative."  Those are different.
13          MR. TSCHIRHART:  Administrative, I think that there
14  could be a potential cause of action if someone's acting in an
15  administrative capacity, Your Honor.
16          THE COURT:  So they're not immune under sovereign
17  immunity if they're in an administrative capacity?
18          MR. TSCHIRHART:  I think the argument could be made,
19  Your Honor.
20          THE COURT:  Okay.  And we're talking hypothetically.
21  Okay?  You're saying -- so judicial and legislative, they would
22  be immune, but not administrative, generally speaking?
23          MR. TSCHIRHART:  Generally speaking, yes, Your Honor.
24          THE COURT:  Okay.  So where is the law that divides
25  sovereign immunity and says, under some acts you have sovereign

Motion Hearing - February 2, 2024

1   immunity protection and under some acts you don't?

2          MR. TSCHIRHART:  Texas judges are entitled --

3          THE COURT:  No.  I said, what's the law?  I didn't --

4   I didn't ask for the principle.  I know the principle.  I know

5   about judicial immunity.  I have it in this courtroom.  Right?

6   I know.

7          MR. TSCHIRHART:  Absolutely.

8          THE COURT:  But if I go out and give a speech and I

9   cause somebody to get arrested, I don't have judicial immunity

10  because I'm not acting in my role as a judge in a courtroom,

11  sitting as an arbiter between the parties, right?

12         MR. TSCHIRHART:  Right.

13         THE COURT:  Okay.  So there is a limit to judicial

14  immunity as well.  Is that a fair statement, Mr. Tschirhart?

15         MR. TSCHIRHART:  There's always limits.

16         THE COURT:  Okay.  That's fine.  That's where we are.

17  No.  Don't -- hold on.  Okay?

18     So I want to understand the argument here, generally

19  speaking.  You're saying the law is that in a judicial and a

20  legislative capacity it's absolute immunity, no matter what.

21  And in a -- and in an administrative, it could be limited.

22         MR. TSCHIRHART:  Hypothetically, yes, Your Honor.

23         THE COURT:  Hypothetically speaking.  Right.

24     So your argument here today, though, is he was acting in a

25  judicial capacity; therefore, judicial immunity attaches?

Motion Hearing - February 2, 2024

```
 1            MR. TSCHIRHART:  Was acting in his official capacity.
 2            THE COURT:  As a judicial officer, is what you're
 3  saying?
 4            MR. TSCHIRHART:  As a judicial officer.
 5            THE COURT:  Okay.
 6            MR. TSCHIRHART:  But the law is clear, Your Honor,
 7  that judges, Texas judges are entitled to 11th Amendment
 8  immunity for claims that are asserted against them in their
 9  official capacity.  It's Warnock v. Pecos County.  There is
10  a --
11            THE COURT:  Okay.  So what you're basically saying is
12  you can never sue a person in their official capacity under
13  1983 no matter how egregious their conduct may be.  That's what
14  you're basically arguing.
15            MR. TSCHIRHART:  An official capacity suit against a
16  judge in the state of Texas --
17            THE COURT:  Right.
18            MR. TSCHIRHART:  -- is a suit against the State of
19  Texas?
20            THE COURT:  It's a suit against a political
21  subdivision, correct.  So you're saying the State of --
22            MR. TSCHIRHART:  No.  It's the State of Texas, Your
23  Honor.
24            THE COURT:  Well, right, because they're created by
25  the State of Texas.  Counties are created --
```

Motion Hearing - February 2, 2024

1      Okay.  So here's my question, Mr. Tschirhart.  So you're
2   saying the State of Texas could never be sued.  They always
3   have sovereign immunity.
4           MR. TSCHIRHART:  State of Texas can waive sovereign
5   immunity under certain circumstances, and Congress can waive
6   sovereign immunity under certain circumstances, and Congress
7   has done so.
8           THE COURT:  Okay.  We're not talking about Congress.
9   We're not talking about Congress, because we're talking
10  about -- it's an action against state actors, not against
11  federal actors.
12          MR. TSCHIRHART:  Certainly.
13          THE COURT:  So --
14          MR. TSCHIRHART:  And the state has waived immunity as
15  to state actors in the law enforcement field.  But that
16  immunity has not been waived as to judicial officers.
17          THE COURT:  Okay.  So let's concentrate then on what
18  constitutes judicial actions.
19          MR. TSCHIRHART:  Okay.  Your Honor.
20          THE COURT:  Okay.  Go ahead.
21          MR. TSCHIRHART:  Finding someone in contempt is a
22  judicial action.
23          THE COURT:  Okay.  So if I'm in the hallway of this
24  courthouse and I find somebody in contempt, that's judicial
25  action?

Motion Hearing - February 2, 2024

1        MR. TSCHIRHART:  There are four factors that are --
2   that are measured in that, Your Honor.
3        THE COURT:  Okay.
4        MR. TSCHIRHART:  And those factors are from *Adams v.*
5   *McIlhany*, a case I cited to you, Your Honor.
6      One, whether the precise act complained of is a normal
7   judicial function.  We're arguing that holding a person in
8   contempt in an official meeting is a normal judicial function.
9      The second is whether the act occurred in the courtroom or
10  appropriate adjunct spaces, such as the judge's chambers.  If
11  somebody insulted you in your chambers, Your Honor, you
12  certainly would have the capacity to hold them in contempt.  In
13  this case this contempt came as a direct contempt in a meeting
14  that this judge was presiding over.
15     Whether the controversy centered around a case pending
16  before the Court.  Well, certainly the controversy centered --
17        THE COURT:  But there was no controversy before the
18  Court.  You didn't have parties arguing an action before this
19  court.
20        MR. TSCHIRHART:  It wasn't a lawsuit, Your Honor.  But
21  it certainly was an action before the Court.
22        THE COURT:  It was an action before the Court brought
23  by the commissioners to the body of the Court.  It wasn't
24  parties presenting anything to the Court, right?
25        MR. TSCHIRHART:  That's correct, Your Honor.

Motion Hearing - February 2, 2024

1          THE COURT:  Okay.  So there was no case in controversy
2    so to speak?
3          MR. TSCHIRHART:  There was no case in controversy in
4    the sense of a lawsuit, Your Honor.  I would agree with that.
5          THE COURT:  Okay.  Go ahead.
6          MR. TSCHIRHART:  And whether the act arose directly
7    out of a visit to the judge in his official capacity.
8    Plaintiff appeared before this judge in her -- in his official
9    capacity as he was overseeing this meeting, Your Honor.  That's
10   a judicial act.
11         THE COURT:  Okay.  So let's talk about -- you're
12   saying -- aside from the statute that says commissioners' court
13   can hold somebody in contempt, you're saying there's a separate
14   right as a county judge to hold somebody in contempt of court,
15   directly in contempt of court.  You're saying that somehow
16   that's just an inherent power.  Am I understanding,
17   Mr. Tschirhart?
18         MR. TSCHIRHART:  It is a power of every court, Your
19   Honor.
20         THE COURT:  No.  I'm just -- listen to my question.  I
21   got to tell you, Mr. Tschirhart, I've had a lot of attorneys
22   before me.  When they don't want to answer my questions
23   directly, that raises a lot of red flags.  That means that
24   you're trying to think that you're going to misdirect me or
25   redirect me.  It will not happen.  It will not happen.  So

Motion Hearing - February 2, 2024

1  please just answer my questions.

2      So you're saying that, aside from the statutory contempt

3  powers, there's an inherent direct contempt of court power that

4  the county judge has.

5              MR. TSCHIRHART:  Yes, Your Honor.

6              THE COURT:  Okay.  So if they have that inherent

7  direct contempt power, the State of Texas didn't need to pass a

8  statute for contempt when they're enacting as a commissioners'

9  court.  Would that be a fair statement?

10             MR. TSCHIRHART:  Wouldn't need to pass a statute to

11  authorize the judge to hold someone in contempt.  That's --

12             THE COURT:  It didn't authorize.  Okay.  So what

13  you're saying is, the judge can do it alone, directly, without

14  the -- without a vote from the commissioners, without

15  discussion from the commissioners.  So why would the state put

16  in more limitations to that contempt power by saying, in a

17  commissioners' court it requires the full court to vote on it?

18             MR. TSCHIRHART:  I do not believe that this is a

19  limitation on the judge's power at all.  This is --

20             THE COURT:  Then why pass it?

21             MR. TSCHIRHART:  Because it's a power that the

22  commissioners' court has --

23             THE COURT:  I get it.

24             MR. TSCHIRHART:  -- to enforce --

25             THE COURT:  I get it.  But the question is, if there

Motion Hearing - February 2, 2024

1    is a broader, more direct power that the county judge has

2    alone, by adding a vote of the commissioners' court, you're

3    actually making it more difficult to find somebody in contempt

4    of court at commissioners' court.  The state was.  So why pass

5    it if you don't intend it to be a limitation?

6            MR. TSCHIRHART:  Because commissioners' courts have to

7    operate under the Texas Open Meetings Act, Your Honor.

8            THE COURT:  I get it.  Open Records, Open Meetings

9    Act.  I get it.

10            MR. TSCHIRHART:  That's right.

11       And so if the commissioners' court thinks somebody is not

12    complying with their edict, that they have a lawful ability to

13    direct them --

14            THE COURT:  Right.

15            MR. TSCHIRHART:  -- they can set a meeting.  At that

16    meeting, they can take up this contempt under this statute.

17            THE COURT:  Okay.  So the question becomes, if a

18    county judge has the sole and inherent and unlimited power to

19    find somebody directly in contempt and order them to be jailed,

20    why would the state need to pass a statute that would say the

21    commissioners' court need to do it?

22            MR. TSCHIRHART:  It's a tool that the commissioners'

23    court can use to enforce its edicts, Your Honor.

24            THE COURT:  Okay.  But it requires the --

25            MR. TSCHIRHART:  It's a different kind of contempt.

Motion Hearing - February 2, 2024

1    THE COURT:  But the contempt that you're talking about
2 really doesn't even exist, Mr. Tschirhart.  And you're
3 basically -- your argument is, it is such a direct and inherent
4 and overwhelming power that due process rights can be violated
5 and nobody can be given a right to be heard.  That's basically
6 your argument.
7    MR. TSCHIRHART:  I don't think that's correct, Your
8 Honor.  I think that people can have a right to --
9    THE COURT:  But that's what happened in this case.
10    MR. TSCHIRHART:  I think people can have a right to be
11 heard.  They can appeal.  There's a variety of things that they
12 can do.  I just don't think that 1983 reaches to this.
13    THE COURT:  So if somebody gets harmed, they can't, in
14 any way, seek redress outside of an appeal to the district
15 court, I'm assuming, of that judicial area.
16    MR. TSCHIRHART:  They can appeal to the district
17 court.  They can make --
18    THE COURT:  So all they can do is --
19    MR. TSCHIRHART:  -- a judicial complaint.
20    THE COURT:  So all they can do is potentially get
21 their contempt order reversed.  But if they are harmed in any
22 way that requires some kind of remuneration, you're saying,
23 tough luck?
24    MR. TSCHIRHART:  I'm saying that 1983 doesn't reach --
25    THE COURT:  No.  Listen to what I'm asking.  I didn't

Motion Hearing - February 2, 2024

1  ask about 1983, Mr. Tschirhart.  I'm saying, tough luck.

2  You're out of luck.

3       MR. TSCHIRHART:  Under 1983, yes, Your Honor.

4       THE COURT:  I didn't ask that, Mr. Tschirhart.  I

5  didn't ask that.  That's what I'm saying.  You don't answer my

6  questions.  I'm going to tell you.  That means, to me, that you

7  think you're going to bluff me or redirect me.  That will not

8  happen, Mr. Tschirhart.  I get that this is your first time in

9  my court.  But I would suggest that you listen to what I'm

10 saying.  I actually mean what I say.

11    So my question is, you can appeal your conviction.  You

12 might have it overturned.  And so you're not -- you don't have

13 a conviction on your record.  But outside of that, any kind of

14 damages, you're out of luck.

15      MR. TSCHIRHART:  I do not believe that there are any

16 other causes of action that could be brought.  However --

17      THE COURT:  So you're out of luck --

18      MR. TSCHIRHART:  May be out of luck --

19      THE COURT:  -- is what you're arguing.

20      MR. TSCHIRHART:  -- Your Honor.

21      THE COURT:  Okay.

22      MR. TSCHIRHART:  But I think you're certainly out of

23 luck under 1983.

24      THE COURT:  So what you're basically saying, to

25 restate what I said before, a county judge has plenary and

Motion Hearing - February 2, 2024

1   inherent power to violate anybody's rights and it can get away

2   with it financially, is what you're arguing.

3          MR. TSCHIRHART:  No, Your Honor.

4          THE COURT:  Yeah.  That is what you're arguing.

5   You're saying a county judge, as a state actor, has plenary

6   power to violate anybody's rights, and they can never be sued

7   under 1983 and have any type of -- no one could have any kind

8   of redress.

9          MR. TSCHIRHART:  That is not our argument, Your Honor.

10          THE COURT:  That is your argument, Mr. Tschirhart.

11   That's the outcome of your argument.  They're protected by

12   judicial immunity and sovereign immunity.  Therefore, any kind

13   of cause of action's barred.

14          MR. TSCHIRHART:  I think this -- I think this cause of

15   action is barred --

16          THE COURT:  Why is this one different from any general

17   one?

18          MR. TSCHIRHART:  I'm sure that I could come up with a

19   hypothetical --

20          THE COURT:  I'm sure you could.

21          MR. TSCHIRHART:  -- that would provide for a 1983

22   cause of action against somebody --

23          THE COURT:  Okay.  So then -- so then sovereign and

24   judicial immunity are not absolute.  If you can come up with a

25   hypothetical, they're not absolute, which is what you've been

Motion Hearing - February 2, 2024

1   arguing.  They're absolute and, therefore, it automatically

2   bars.

3            MR. TSCHIRHART:  I think it bars these claims, Your

4   Honor.

5            THE COURT:  That wasn't my question, was it?  Thank

6   you, Mr. Tschirhart.  But you're telling me everything I need

7   to know about your argument that way.

8       So the bottom line is, these immunities that you're raising

9   today in this case, hypothetically speaking, not about the

10  facts of this case, are they absolute or are they not absolute?

11           MR. TSCHIRHART:  They would not be absolute, Your

12  Honor, under a different fact pattern --

13           THE COURT:  Okay.  We got that established.

14           MR. TSCHIRHART:  -- or under different pleadings.

15           THE COURT:  Okay.  We got that established.

16      So what is it about this case, now these facts, that makes

17  it an absolute bar?

18           MR. TSCHIRHART:  Because Judge Cantu was acting in his

19  judicial capacity when he held plaintiff in contempt.

20           THE COURT:  Okay.

21           MR. TSCHIRHART:  1983 doesn't reach to that, Your

22  Honor.  He has judicial immunity.  He has 11th Amendment --

23           THE COURT:  Immunity.

24      Okay.  So the question goes back to the first part of how

25  we started out some of this -- the conversation.  So you're

Motion Hearing - February 2, 2024

1  basically saying, the state passes a statute, how

2  commissioners' court can find somebody in contempt.  But a

3  county judge can directly bypass this by this inherent power,

4  that has no standards, no test, no findings, no anything.  Is

5  that what you're saying?

6          MR. TSCHIRHART:  I'm saying that the statute applies

7  to a different kind of a contempt.

8          THE COURT:  Okay.  Listen to my question.  Okay?

9    What do you mean "a different kind of contempt"?  It's

10 contempt.  And it has the penalty of one day in jail and a

11 fine, Mr. Tschirhart.  That's what the statute says.

12     So my question to you is, the State of Texas passes a

13 statute that says how commissioners' court can find somebody in

14 contempt and sentence them to jail time and fine them.  But

15 there's this other inherent power, that only the county judge

16 has, for what you call "direct contempt," that does not have a

17 statutory or a constitutional foothold, that has no test to

18 determine what the -- what constitutes contempts, and no

19 finding need be made before you throw somebody in jail for

20 what -- however amount of time.  Is that what your argument is?

21          MR. TSCHIRHART:  That is not what my argument is, Your

22 Honor.

23          THE COURT:  Well, then you're the one that's arguing

24 the direct contempt.

25          MR. TSCHIRHART:  Your Honor, I'm saying that these are

Motion Hearing - February 2, 2024

1   two different kinds of contempt.

2         THE COURT:  I get it.  But the one contempt that

3   you're wanting me to buy into has no statutory or

4   constitutional basis, has no due process built into it, has no

5   findings you're saying that need be made and doesn't tell

6   anybody what the potential punishment could be.

7         MR. TSCHIRHART:  That's what I'm saying, Your Honor.

8   Yes.

9         THE COURT:  That would be unconstitutional,

10  Mr. Tschirhart.  A person needs to know what the penalties are

11  before they're so found, in a criminal setting.  That would be

12  unconstitutional.  That would violate due process bigger than

13  life.

14        MR. TSCHIRHART:  There are things that are

15  unconstitutional, Your Honor.

16        THE COURT:  I get it.  And that sounds like, the way

17  you're describing direct contempt would fit into that category.

18        MR. TSCHIRHART:  But 1983 does not reach that --

19        THE COURT:  No.  We're not talking about that right

20  now, Mr. Tschirhart.  I'm going to let you make your record on

21  that.  Don't worry about it.  I will.

22     But you're -- but you're basing it on this direct contempt

23  process that you're talking about, that you can't point me to a

24  statutory foothold for it.  You can't point me to a state

25  constitutional foothold for it.  You can't point to any test

1    that says how and why you find contempt.

2        You're basically saying no findings need to be made.  And

3    they can -- people can be put in jail for this contempt finding

4    without any kind of notification as to what the -- what the --

5    what the penalties are, what they're facing.  And they're not

6    allowed to allocute, to have counsel, to defend themselves

7    before this direct contempt order can be issued.

8        That's what you're basically telling this Court, which

9    would be unconstitutional, Mr. Tschirhart.

10           MR. TSCHIRHART:  Texas Constitution Article V, Section

11   18(b) --

12           THE COURT:  Article V, 18(b)?

13           MR. TSCHIRHART:  That's correct.

14           THE COURT:  Okay.

15           MR. TSCHIRHART:  -- gives a county judge, as presiding

16   officer, all of the -- the Texas Constitution creates the

17   county judge as presiding officer in commissioners' court.

18           THE COURT:  I want where it says "direct contempt."

19           MR. TSCHIRHART:  Well, direct contempt has been, since

20   the founding of this nation, and before --

21           THE COURT:  No.  Where is it -- where is it set?

22   Where are the processes?  Where is the due process,

23   Mr. Tschirhart?  Because what you're describing as direct

24   contempt of court is a violation of the federal Constitution

25   due process rights, completely.

Motion Hearing - February 2, 2024

1      You cannot hold somebody in criminal contempt, what would
2   end up being criminal contempt, sentence them to jail, without
3   advising them of their penalties and giving them a chance to
4   defend themselves.  Otherwise, you're in violation of the due
5   process clause.  Where is the process that you're trying to
6   describe to me, other than saying, it's an inherent power.
7           MR. TSCHIRHART:  Your Honor, I don't have a process to
8   describe to you.  You're correct about that.  I don't have a
9   statutory authority for a judge to hold someone in contempt.
10          THE COURT:  Okay.  So what is the punishment range for
11  that contempt that you're describing?  Generally, generally
12  speaking, how long can a person be held in contempt and put in
13  jail?
14          MR. TSCHIRHART:  I do not know, Your Honor.
15          THE COURT:  Then it would be a violation of due
16  process, Mr. Tschirhart.
17          MR. TSCHIRHART:  Your Honor, all we're arguing is that
18  1983 doesn't reach this.
19          THE COURT:  I get it.  But you got to have contempt
20  powers, to begin with, to get to that point, to get to judicial
21  immunity.  And judicial immunity protects a bad decision.  It
22  does not protect an unauthorized decision.  And so you're
23  trying to protect an unauthorized, potentially unauthorized
24  decision with this thing called "direct contempt."  And the way
25  it's described would be unconstitutional.

Motion Hearing - February 2, 2024

1    So the only other provision is the statutory one, which
2  requires commissioners' court, who did not take action in this
3  matter.
4          MR. TSCHIRHART:  That's correct.  Commissioners' court
5  did not take action in this matter.
6          THE COURT:  Okay.  So the question is, where did the
7  authority come to issue this ruling?
8          MR. TSCHIRHART:  The authority comes from the inherent
9  power of a judge in the state of Texas.
10         THE COURT:  Okay.  So what you're basically doing is
11 you're relying on an unconstitutional power that you created
12 out of thin air, called "direct contempt."
13         MR. TSCHIRHART:  Judges have been holding people in
14 contempt for many years, Your Honor --
15         THE COURT:  I get that, Mr. Tschirhart.  But you
16 can't throw -- you can't throw somebody in jail for contempt,
17 and you can't sentence somebody in jail for contempt without
18 giving them notice of what the possible punishment would be and
19 giving them a chance to defend themselves.
20         MR. TSCHIRHART:  I don't disagree with you, Your
21 Honor.
22         THE COURT:  Then that would be -- then the process
23 you're talking about would be ruled unconstitutional,
24 Mr. Tschirhart.  There is no notice to a person who's being
25 held in some -- for some kind of criminal violation.

Motion Hearing - February 2, 2024

1          MR. TSCHIRHART:  I agree, Your Honor.

2          THE COURT:  So if it's unconstitutional, there is no

3     authority for direct contempt.

4          MR. TSCHIRHART:  I don't agree with that, Your Honor.

5          THE COURT:  Well, you can't have it both ways,

6     Mr. Tschirhart.  You can't have an unconstitutional construct

7     that is employed and then claim, I never had authority because

8     it's unconstitutional, but I'm protected by judicial immunity.

9       It's not a logical or a legal conclusion.

10         MR. TSCHIRHART:  Your Honor, I apologize if I haven't

11    argued this in a clear enough fashion.

12         THE COURT:  I get that you're arguing judicial

13    immunity.  I get that part, Mr. Tschirhart.  I understand that.

14    But it's what I've just said.  To be able to claim judicial

15    immunity, you have to have had the power to exercise your

16    authority.

17      You're telling me this power comes from direct contempt,

18    which really is unconstitutional, the way you're describing it.

19    So there's a difference between a bad decision by a judge and

20    having no authority to make the decision.

21         MR. TSCHIRHART:  And, Your Honor, we're arguing that

22    the judge had authority to hold --

23         THE COURT:  Based on direct contempt, which has no

24    process, no notice, no due process provisions.  That's what

25    you're arguing, Mr. Tschirhart.  You're making it kind of easy

Motion Hearing - February 2, 2024

1  for this Court to find no authority to issue a decision.  So,
2  therefore, no judicial immunity.  If that's what you're relying
3  on.
4          MR. TSCHIRHART:  Your Honor, we've provided you with
5  the authority.
6          THE COURT:  You provided me with the authority
7  because -- you didn't provide me authority for judicial
8  immunity.  You provided me -- you basically assumed there's
9  judicial immunity; therefore, there can't be a 1983 lawsuit.
10  That was your argument in your motion.  I assert judicial
11  immunity; therefore, it all ends.
12          MR. TSCHIRHART:  That's correct, Your Honor.
13          THE COURT:  Okay.  I get that, Mr. Tschirhart.  That
14  wasn't lost on me.  But you got to have the authority first to
15  be able to claim judicial immunity.  You skipped that part in
16  your pleadings.  That's what I'm trying to get to right now.
17  The authority that you're giving to me today and what I'm
18  giving you the opportunity to explain to me -- the legal
19  authority to make a bad decision, let's say.  I'm waiting to
20  hear what it is.
21      You're telling me it's this direct contempt, which doesn't
22  exist in the law.  There is no known punishment for it.  It
23  doesn't require any findings.  It doesn't require anything else
24  other than, I find you in contempt.  I sentence you to jail,
25  period.

Motion Hearing - February 2, 2024

 1      That's the -- that's the process you're explaining to me
 2  that gave authority in this case.
 3          MR. TSCHIRHART:  Your Honor, I believe that's the
 4  process that you believe happened here.
 5          THE COURT:  No.  I'm saying -- I'm asking generically,
 6  based on the law that you're explaining to me -- not what Judge
 7  Cantu did.  I'm talking about generically.  What you're
 8  basically saying is, a county judge can basically say, I find
 9  you in contempt.  I sentence you to X.  I don't have to make
10  any findings.  I don't have to give you any rights.  I don't
11  even have to tell you where to find the provision in the law
12  that gives me the authority.  And I don't even have to warn you
13  of what your potential punishment could be before I could just
14  find you in contempt and throw you in jail.
15      That's the process you're describing to me generally, that
16  direct contempt would have.
17          MR. TSCHIRHART:  Your Honor, that didn't happen in
18  this case.
19          THE COURT:  That's not my question, was it,
20  Mr. Tschirhart?  Was it?  That was not my question, was it?
21          MR. TSCHIRHART:  But I will answer your question.  I
22  say that a county judge has that authority.
23          THE COURT:  Period?
24          MR. TSCHIRHART:  Period.
25          THE COURT:  Okay.  So --

Motion Hearing - February 2, 2024

1          MR. TSCHIRHART:  Now --

2          THE COURT:  You're basically saying a county judge can

3    unconstitutionally issue a contempt order, and then is then

4    protected by judicial immunity?

5          MR. TSCHIRHART:  That's correct, Your Honor.

6          THE COURT:  Fascinating, Mr. Tschirhart.  That would

7    be a novel area of the law.  If that's your argument, proceed

8    with your judicial immunity argument.

9          MR. TSCHIRHART:  I think we've gone through my

10   judicial immunity argument.

11         THE COURT:  Well, that's the only one that was raised

12   in your pleadings correctly.

13         MR. TSCHIRHART:  And I see that -- I see that you're

14   not -- you're not buying it, and I'm okay with that.

15         THE COURT:  No.  I'm not -- it's not that I'm

16   necessarily not buying it in this particular case.  I'm just

17   not buying that such an unconstitutional scheme exists in the

18   law that would give any court the authority to violate people's

19   rights that way.

20         MR. TSCHIRHART:  There are checks and balances here,

21   Your Honor.  But 1983 --

22         THE COURT:  Okay.  So what are the checks and -- what

23   would the checks and balances be?

24         MR. TSCHIRHART:  A decision by the district court that

25   oversees the county.

Motion Hearing - February 2, 2024

1          THE COURT:  Okay.  But that -- all that does is
2    reverse the conviction, right?
3          MR. TSCHIRHART:  That's correct, Your Honor.
4          THE COURT:  Okay.  Again, let's not talk about the
5    facts of this case.  Let's talk about a generic hypothetical.
6    We'll do the worst-case scenario that did not happen in this
7    case.  Okay?
8       I'm a county judge.  I find you just summarily in contempt,
9    without anything else.  I sentence you to three days in prison.
10   You end up in prison.  You are horribly beaten by another
11   prisoner, and the only remedy you have is to have your contempt
12   conviction reversed.
13         MR. TSCHIRHART:  I believe that you can't get there
14   from 1983, Your Honor.
15         THE COURT:  Well, how can you get there?
16         MR. TSCHIRHART:  I think that you can make judicial
17   complaints.  You can --
18         THE COURT:  Okay.  But how do you get redress for your
19   harm?
20         MR. TSCHIRHART:  I don't think you can get it through
21   1983, Your Honor.
22         THE COURT:  That's not my question.  I said "how."
23   What would be, then, the redress if you're --
24         MR. TSCHIRHART:  The law -- the law doesn't provide a
25   redress for every perceived wrong, Your Honor.

Motion Hearing - February 2, 2024

1    THE COURT:  Well, I can't disagree generally with

2    that.  But you're basically saying then that not -- I'm not

3    talking about Judge Cantu.  Generally speaking, basically

4    county judges can act as dictators and avoid any kind of

5    financial remedy to the victim?

6    MR. TSCHIRHART:  I believe that's correct, Your Honor.

7    THE COURT:  I believe that's unlawful, Mr. Tschirhart.

8    There are no such thing as dictators.  Not even federal judges.

9    As much as we think we are, even we're not dictators.

10   That's -- that does not persuade me at all.  Granting

11   judicial immunity based on authority by a, quote, unquote,

12   dictator doesn't sway me.

13   So give me some better legal authority.

14   MR. TSCHIRHART:  Your Honor, it's just inherent in

15   the -- in the position of the judge, that they have to be able

16   to control their courtroom.

17   THE COURT:  Okay.  So if you were to say to me,

18   Mr. Tschirhart, that that inherent authority, the remedy is,

19   you kick somebody out of a meeting, they can't necessarily be

20   heard, would have a little more logic to it, would have a

21   little more controlling the flow of your meeting, taking

22   control of your meeting, not letting anybody -- just anybody

23   get up and walk in the process.  I think I could understand

24   that a little bit more.

25   But ordering somebody to be jailed is a different matter.

Motion Hearing - February 2, 2024

1   Now you're talking about the criminal justice part of it.

2   Okay?  That makes -- in this case that was ordered, after

3   consultation with counsel.  Okay?

4           MR. TSCHIRHART:  Yes, Your Honor.

5           THE COURT:  So the question becomes, how is that

6   valid?

7           MR. TSCHIRHART:  Your Honor, I think that --

8           THE COURT:  Because the only provision that allows for

9   jailing somebody for contempt is that provision that requires

10  commissioner court authority, not county judge.

11          MR. TSCHIRHART:  I believe that a county judge has the

12  inherent authority.

13          THE COURT:  I know what you believe.  But your opinion

14  is not the law here, Mr. Tschirhart.

15          MR. TSCHIRHART:  I understand.

16          THE COURT:  Okay?  I'm just saying, the only statute

17  that calls for up to 24 hours in jail, a day in jail, and a

18  fine is the one that requires action by commissioners' court.

19      Now, if it were being -- if it were based on an action of

20  commissioners' court, there's a statute for it.  There's

21  notice.  There's the punishment that's set by statute.  People

22  have notice of it, technically.  Different situation

23  potentially.

24      But that's not what you're relying on.  There's got to be

25  notice before you hold somebody in a criminal matter.  There's

Motion Hearing - February 2, 2024

1  got to be notice.  That's due process.

2          MR. TSCHIRHART:  Your Honor, I'm not sure that really

3  works that way.  People are arrested every day.

4          THE COURT:  But we have a process.  It's called due

5  process.  They come in for initial appearances.  We appoint

6  attorneys.  They have a right to defend themselves.  As a

7  matter of fact, they have a right to allocute before they get

8  sentenced by a judge.  And if we don't allow them to allocute,

9  that conviction gets reversed by the Court of Appeals.

10     However, they get that opportunity.  The process is in

11  place to give them that opportunity, none of which happened in

12  this case.  None.

13          MR. TSCHIRHART:  That's correct, Your Honor.

14          THE COURT:  Okay.  So it is due process,

15  Mr. Tschirhart.

16          MR. TSCHIRHART:  But if she had actually spent time in

17  jail, she would have --

18          THE COURT:  No, no, no, no, no.  The actions of the

19  judge are not based on the time she spent in jail.  It's on his

20  actions.  He can't claim judicial immunity based on what ended

21  up not happening because maybe the sheriff didn't execute the

22  order.  He can't claim judicial immunity on that, which is what

23  you're trying to do.

24     The question here is -- if he had the authority to do it,

25  like you're saying, then the question is, judicial immunity

Motion Hearing - February 2, 2024

1   attaches to a bad decision if it was done in a judicial
2   capacity.  No doubt about that, Mr. Tschirhart.  Okay?  But you
3   got to have the authority to begin with, to make the decision,
4   good or bad.  So that's the question, really, before the Court.
5       Again, part of the problem here is the remedy of that
6   contempt finding.  The remedy was criminal in nature.  Once you
7   do that, you go to have due process.  And you got to have
8   notice.  You can't create a crime out of thin air when people
9   don't have notice of it.
10          MR. TSCHIRHART:  I don't believe that's what happened
11   here, Your Honor.
12          THE COURT:  Well, counsel, the only provision that
13   gives anybody notice of a potential criminal penalty is the one
14   that requires commissioner court authority, an order to find
15   somebody in -- contempt.  Because what you're describing as
16   direct contempt gives no one notice because it just comes out
17   of the ether.
18          MR. TSCHIRHART:  That's correct, Your Honor.
19          THE COURT:  Okay.  Well, that would be
20   unconstitutional, Mr. Tschirhart, frankly.  It's
21   unconstitutional to throw people in jail based on a perceived
22   piece of authority coming out of the ether.
23          MR. TSCHIRHART:  I don't believe the authority is
24   coming out of the ether.
25          THE COURT:  Well, you can't point to any piece of

Motion Hearing - February 2, 2024

1  legislation or constitutional provision that says, this is
2  contempt of court, these are the findings, this is the
3  punishment.
4         MR. TSCHIRHART:  You are correct, Your Honor.
5         THE COURT:  Okay.  So that's violative of the due
6  process clause.
7      Again, I get the authority to hold order in a proceeding.
8  Right?  I get that.  Summary contempt in federal court, I got
9  to give you notice that you're about to be found in summary
10  contempt.  I've got to tell you what the potential punishment
11  is.  I've got to make -- and then if I do find you in contempt,
12  I got to make findings on the record.  Okay?  I have to do that
13  for summary contempt, right?
14         MR. TSCHIRHART:  That is correct, Your Honor.
15         THE COURT:  Okay.  So you're telling me that a county
16  judge has more authority to find somebody in contempt and throw
17  them in jail than a federal judge does on summary contempt?
18         MR. TSCHIRHART:  I'm saying that those rules that
19  you're citing are applicable to this court, Your Honor.
20         THE COURT:  Right.  But what I'm saying is, because
21  you can throw somebody in jail, you got to give them notice.
22         MR. TSCHIRHART:  But they are not applicable to a
23  state court judge in Texas.
24         THE COURT:  Okay.  So what you're telling me is,
25  basically, they can be dictators in commissioners' court

Motion Hearing - February 2, 2024

1  without a vote, hold anybody in contempt without any notice,

2  without any type of due process, and put them in jail, and

3  there's nothing anyone can do about it.  That's what you're

4  arguing, Mr. Tschirhart.

5          MR. TSCHIRHART:  Your Honor, I'm not arguing that at

6  all.

7          THE COURT:  That is basically the effect of your

8  argument.

9          MR. TSCHIRHART:  I understand.  The "dictator" part

10  and all this other stuff is not what this is.

11          THE COURT:  A court --

12          MR. TSCHIRHART:  A judge has the ability to control

13  his courtroom.

14          THE COURT:  That's fine.  But the punishment was

15  criminal here, Mr. Tschirhart.  And once you get to that point,

16  the rules change.  The rules change.  You can't just do

17  whatever you want at that point.  You have to follow the

18  precepts of due process, federal due process.  Okay?

19      It's not just -- and I get, Mr. Tschirhart, that a lot of

20  people don't know some of these things.  It's not a bad

21  intention kind of a situation.  But like I said, if you were

22  misbehaving right now and I wanted to keep order in my court, I

23  have an option of saying, you need to leave my courtroom.  Go.

24      Okay.

25          MR. TSCHIRHART:  Yes, Your Honor.

Motion Hearing - February 2, 2024

```
 1            THE COURT:  Not a criminal sanction, right?

 2            MR. TSCHIRHART:  That's correct.

 3            THE COURT:  You're just barred from my courtroom.

 4            MR. TSCHIRHART:  That's correct, Your Honor.

 5            THE COURT:  But if I'm going to hold you criminally

 6   responsible and sentence you to any time in jail, I got to give

 7   you notice that I'm going to hold you in contempt.  I got to

 8   tell you, you can be punished up to three days in jail and a

 9   thousand dollar fine.  And every action of contempt is a

10   different three days, $1,000 fine.  And you're being

11   disruptive, obstructive, whatever.  So if you continue, I'm

12   going to have to find you in contempt.

13      I got to make those findings before I do find you in

14   contempt.  You're telling me a county judge doesn't have to do

15   that before they impose criminal sanctions for contempt.

16            MR. TSCHIRHART:  I'm telling you, Your Honor, that

17   1983 doesn't reach --

18            THE COURT:  That's not what I asked.  That's not at

19   all what I asked, Mr. Tschirhart.  So the answer to my question

20   is yes.  You're telling me that that's the process.

21            MR. TSCHIRHART:  Is it proper to hold someone in

22   criminal contempt without due process?  No, Your Honor.

23            THE COURT:  But that's what happened.

24            MR. TSCHIRHART:  But 1983 doesn't get us there.

25            THE COURT:  Okay.  So what is the remedy for that,
```

Motion Hearing - February 2, 2024

1   outside of getting your conviction reversed, if you are

2   physically harmed?

3        MR. TSCHIRHART:  I do not believe that there is a

4   remedy under 1983, Your Honor.

5        THE COURT:  That wasn't my question, Mr. Tschirhart.

6   You keep avoiding my question.  You keep repeating "it's not a

7   remedy under 1983" is not answering my question, and it's not

8   being persuasive in terms of where we are in this matter.  Just

9   answer my questions.

10       MR. TSCHIRHART:  I understand, Your Honor.

11       THE COURT:  So just answer my questions.  You might

12  make headway that way, Mr. Tschirhart.  You might win something

13  here if you just answer my questions.

14       MR. TSCHIRHART:  There may be a civil remedy.

15       THE COURT:  Okay.  So 1983 is a civil remedy.  So what

16  civil remedies do you think are available?  And I'm not

17  suggesting for her to file or to change pleadings.  I'm not

18  suggesting that, Mr. Tschirhart.  I'm just saying, so what

19  civil remedies?

20       MR. TSCHIRHART:  Your Honor, it's not a civil remedy

21  that's cognizable by this Court.

22       THE COURT:  That's not my question.

23       MR. TSCHIRHART:  I don't --

24       THE COURT:  Well, that wasn't my question.

25       MR. TSCHIRHART:  And I think we would still have the

Motion Hearing - February 2, 2024

 1  same immunity issue, filing a civil suit in a Texas district
 2  court.
 3          THE COURT:  Okay.  So what you're basically saying are
 4  there are no civil remedies?  You're basically saying there are
 5  no civil remedies.
 6          MR. TSCHIRHART:  I don't know of one, Your Honor.
 7          THE COURT:  Okay.  That was just my question:  Are
 8  there any civil remedies?  If you don't know of any -- there
 9  are no civil remedies for any blatant violation of civil
10  rights, is what you're saying?
11          MR. TSCHIRHART:  That's not correct, Your Honor.
12          THE COURT:  In a setting of a -- in a setting of a --
13  in a setting of a county judge in any part of their official
14  capacity.  Not necessarily in this case.  I'm saying in any
15  position in their official capacity.
16          MR. TSCHIRHART:  I think that's correct, Your Honor.
17          THE COURT:  So you're basically saying that your
18  argument of this direct inherent authority basically wipes out
19  1983 for any state actor.
20          MR. TSCHIRHART:  Oh, no, Your Honor.  1983 --
21          THE COURT:  That's not -- excluding law enforcement,
22  excluding law enforcement, as we talked --
23          MR. TSCHIRHART:  I think -- I think it applies to a
24  variety of state actors outside of law enforcement as well,
25  Your Honor.

Motion Hearing - February 2, 2024

1          THE COURT:  Okay.  Where?  Like what?

2          MR. TSCHIRHART:  Well, we can look at the *Iqbal* case

3   out of the Supreme Court.  You know, that was -- of course,

4   that was --

5          THE COURT:  That's a pleading case, right.  *Twombly*

6   and *Iqbal*.

7          MR. TSCHIRHART:  But it wasn't against -- it wasn't

8   against law enforcement officers.

9          THE COURT:  Okay.  So the question becomes, under your

10  analysis -- what you're basically saying, the state -- any

11  state actor has sovereign immunity.  That's what your general

12  argument is, to a certain degree.

13         MR. TSCHIRHART:  I'm saying that judges in the State

14  of Texas are entitled to immunity under the 11th Amendment from

15  1983 claims.

16         THE COURT:  Okay.  Because of the judicial immunity?

17  Or just flat out, no matter what?

18         MR. TSCHIRHART:  The Court has said flat out, no

19  matter what.

20         THE COURT:  I'm asking you, Mr. Tschirhart.

21         MR. TSCHIRHART:  Yes, Your Honor.

22         THE COURT:  Okay.  So you're saying, no matter what a

23  county judge does under any type of proceeding, they are immune

24  from any type of civil remedy because of judicial immunity and

25  sovereign immunity?

Motion Hearing - February 2, 2024

1          MR. TSCHIRHART:  I'm not saying that, Your Honor.  I'm
2   saying --
3          THE COURT:  Of course that's what -- exactly what
4   you're saying.
5          MR. TSCHIRHART:  -- 1983 does not reach that because
6   of the 11th Amendment --
7          THE COURT:  Okay.  So I'm asking you, under your
8   theory of judicial immunity, not just 1983, but any civil
9   remedy -- you just told me you didn't think there were any
10   state or federal civil remedies.  Okay?  So that's why I'm
11   saying -- you're basically saying, if they act at all in their
12   official capacity -- I'm not saying when they go to the grocery
13   store in their private car, anything of that nature.  You're
14   saying they're absolutely immune from any type of civil remedy,
15   no matter what they do?
16          MR. TSCHIRHART:  I don't know the answer to that, Your
17   Honor.  We're here on a 1983 cause of action.
18          THE COURT:  That's not -- wasn't my question,
19   Mr. Tschirhart.  You keep going back to that.  But I've got to
20   know the limits of your arguments, Mr. Tschirhart.  Because if
21   your legal arguments are internally inconsistent, then
22   factually we can go on to that.
23      But you can't make these general arguments and then say,
24   but that's only in this particular case.  I want to know how
25   you're interpreting the statute and the laws.  I need to know

Motion Hearing - February 2, 2024

1  that because that's a starting point in all of these cases.
2  The law.  Okay?
3            MR. TSCHIRHART:  I understand, Your Honor.
4            THE COURT:  So I'm not talking right now about the
5  facts of this particular case.  I'm talking generally, under
6  your theory of the law, any county judge acting as a county
7  judge is always immune from all sort -- any kind of civil
8  remedy claim, no matter what, because of sovereign immunity.
9            MR. TSCHIRHART:  Your Honor, county judges do a lot of
10  things --
11            THE COURT:  I realize that.
12            MR. TSCHIRHART:  -- in their capacity as a county
13  judge.
14            THE COURT:  Uh-huh.
15            MR. TSCHIRHART:  But I would agree with you that if
16  they're in their courtroom, acting as the county judge and
17  presiding over a meeting, that they are immune --
18            THE COURT:  Okay.
19            MR. TSCHIRHART:  -- judicial immunity.
20            THE COURT:  So what if -- what if they're acting as
21  county judge, okay, and they're going out in their capacity as
22  a county judge to inspect a sidewalk, say, and somebody's
23  rights get violated and they get sued?  Are you saying it
24  wouldn't attach to that?
25            MR. TSCHIRHART:  I'm saying that that's not a judicial

Motion Hearing - February 2, 2024

1    action, Your Honor.

2          THE COURT:  Okay.  I'm trying to get to the limits of

3    what you're talking about.  So it's only in the courtroom or

4    the chambers, right, adjacent to the chambers -- to the

5    courtroom.  If they're in that room, does it matter if it's an

6    official proceeding or they're just standing in the room?

7          MR. TSCHIRHART:  I apologize, Your Honor.  That last

8    part.

9          THE COURT:  Okay.  So they're in a meeting.  You're

10   saying yes.

11         MR. TSCHIRHART:  Yes.

12         THE COURT:  Okay.  They're in the -- in the counsel

13   room or whatever, the commissioners' court room.  They're

14   speaking to somebody, talking to somebody.  They take an

15   action.  Is it covered because they happened to be in that

16   room?

17         MR. TSCHIRHART:  No, Your Honor.

18         THE COURT:  Are they covered?  Okay.

19         MR. TSCHIRHART:  No, Your Honor.

20         THE COURT:  Okay.  So it's basically -- it's a

21   judicial action.  It's a case in controversy in a courtroom or

22   in chambers, and they're acting in their official capacity?

23         MR. TSCHIRHART:  That's correct, Your Honor.

24         THE COURT:  Okay.  So go to the facts of this case

25   now, with -- now that I'm kind of understanding -- you're not

Motion Hearing - February 2, 2024

1   saying it's a free-for-all.  There is a limit to it.

2          MR. TSCHIRHART:  Absolutely not, Your Honor.

3          THE COURT:  Okay.  Then let's go to the facts of this

4   case.  Go ahead.

5          MR. TSCHIRHART:  The facts of this case, the county

6   was -- the commissioners' court was considering these bond

7   issues, was my understanding, Your Honor.  This was a valid

8   item that was before the Court.  It was on their agenda, and

9   the judge was presiding over it.

10   Plaintiff sought to interfere with this proceeding, and the

11   judge held her in contempt.  That's a judicial action.  And for

12   that, I believe that he has judicial immunity, and he has 11th

13   Amendment immunity as well, Your Honor.

14          THE COURT:  Okay.  What else?

15          MR. TSCHIRHART:  We shift over to, the other problem

16   with these official claims is that a claim against somebody in

17   their official capacity is a claim against the entity that they

18   represent, not against them individually.

19          THE COURT:  Right.

20          MR. TSCHIRHART:  That's why we call them official

21   capacity claims.  Under those circumstances, you have to plead

22   the *Monell* parts of this, that there is a policy that was

23   adopted by a policymaker and that they were harmed by it and

24   that there was -- there's other issues about it, the

25   foreseeability issue is the big deal.  This policy was adopted,

Motion Hearing - February 2, 2024

1   knowing that this person would be harmed by it.

2          THE COURT:  Wait, wait, wait.  The policy would be the

3   contempt matter?

4          MR. TSCHIRHART:  That's why I'm saying this can't be a

5   policy.

6          THE COURT:  Well, according to you, it doesn't even

7   exist other than in the ether.

8          MR. TSCHIRHART:  Your Honor, that's the problem.

9          THE COURT:  No.  It is a problem, because that

10  violates due process, Mr. Tschirhart.  So you got a bigger

11  problem at the very beginning.

12         MR. TSCHIRHART:  These pleadings don't set forth a

13  policy of the county, do not set forth any of the *Monell*

14  issues.  So it doesn't set up a *Monell* claim.  So the official

15  capacity claims need to go out.  And that leaves us with the

16  individual capacity claims, where we have our qualified

17  immunity.

18         THE COURT:  Wait.  He's acting in his official

19  capacity, and he gets judicial immunity because he's acting in

20  his official capacity, but that also causes him to be immune in

21  his personal capacity?

22         MR. TSCHIRHART:  I think they're two different

23  capacities, Your Honor.

24         THE COURT:  No.  You're right.  They are.

25         MR. TSCHIRHART:  And I'm moving --

Motion Hearing - February 2, 2024

1        THE COURT:  You're right.

2        MR. TSCHIRHART:  -- to the personal capacity --

3        THE COURT:  Right.

4        MR. TSCHIRHART:  -- now.

5        THE COURT:  But you're using, also, judicial immunity

6   for the personal capacity claim?

7        MR. TSCHIRHART:  That's correct.

8        THE COURT:  So he can't be sued as an official in his

9   official capacity, and he can't be sued in his personal

10  capacity because he was acting in an official capacity,

11  basically?

12       MR. TSCHIRHART:  That creates a problem for the

13  plaintiff in this particular case.  But there are other

14  personal capacity 1983 claims that you can bring.  In this

15  particular case it's not pled properly, and that's why we're

16  asking the Court to dismiss the claims.

17       THE COURT:  Okay.

18       MR. TSCHIRHART:  All right.

19       THE COURT:  What else?

20       MR. TSCHIRHART:  And once qualified immunity is

21  raised, and we have raised that, the issue becomes, you have to

22  show -- plaintiff has to show that there's authority out there

23  that puts the official on notice that what he's doing is

24  illegal.

25       THE COURT:  Whoa.  Stop, Mr. Tschirhart.  Stop.  Your

Motion Hearing - February 2, 2024

 1  client doesn't have to put anybody on notice that he can find
 2  them in contempt of court and throw them in jail, but the
 3  plaintiff has to give notice of what they did wrong.  That's
 4  your argument here today.  I got to tell you, Mr. Tschirhart, I
 5  don't do well with internal inconsistencies, factually or
 6  otherwise.
 7        MR. TSCHIRHART:  Your Honor, what I'm saying is, once
 8  qualified immunity is raised --
 9        THE COURT:  I get that.  But you got to have a basis
10  for qualified immunity, one.  And your basis for not overcoming
11  qualified immunity is that your clients didn't have notice what
12  they did wrong.  But it's okay for your client to throw
13  somebody in jail without telling them what they did wrong.
14        MR. TSCHIRHART:  I feel like the plaintiff's rights
15  weren't violated, number one, Your Honor.
16        THE COURT:  Well, that's not -- your opinion as to
17  that, Mr. Tschirhart, is totally irrelevant.
18        MR. TSCHIRHART:  I understand.
19     But under the qualified immunity standard, the plaintiff
20  has the burden --
21        THE COURT:  I get it.  But you got to be able to
22  legitimately raise qualified immunity, first of all.  And part
23  of that is that the plaintiff didn't have notice as to the
24  punishment before it was -- it was given.  So I find it rather
25  rich that the argument that they didn't overcome qualified

Motion Hearing - February 2, 2024

1  immunity is that your clients didn't have notice as to what

2  they did wrong.  That's kind of a pretty interesting conundrum,

3  Mr. Tschirhart.

4         MR. TSCHIRHART:  Well, the essence of qualified

5  immunity --

6         THE COURT:  I understand it.  I have applied it

7  before.

8         MR. TSCHIRHART:  -- is that a public official needs to

9  understand that what he is doing violates the law.

10        THE COURT:  Correct.  And so the bottom -- but the

11  bottom line is, a person that gets sentenced to jail needs to

12  know what they did wrong before they get -- before they get

13  sentenced to jail, Mr. Tschirhart.  We're talking the same

14  language at that point.

15        MR. TSCHIRHART:  We are, Your Honor.  We are, Your

16  Honor.

17     But here, we have a judge who's acting under advice of

18  counsel.  We don't have, from the plaintiff, any cases or other

19  legal authority that say that Judge Cantu cannot hold

20  somebody --

21        THE COURT:  Counsel, you don't have any authority that

22  he can.  You don't have any authority that he can hold somebody

23  in contempt alone and put them in jail.  You don't have that

24  authority.  Where is that legal authority from you, other than

25  it's inherent and in the ethers?

Motion Hearing - February 2, 2024

1      MR. TSCHIRHART:  Your Honor, that has been the --

2      THE COURT:  No, it hasn't been, Mr. -- it hasn't been.

3  Not since we had due process.  And it all started kind of being

4  applied to the states since the '60s and '50s.  So no, it's not

5  just a wide open, do whatever anybody wants without any notice.

6    But you're basically arguing, because the plaintiff didn't

7  give us notice of what we did wrong, we're exempted from having

8  given notice of what she did wrong and violating her rights.

9  It doesn't make any sense.

10      MR. TSCHIRHART:  Not at all, Your Honor.  And I

11  apologize if I was clumsy in my explanation.  Once qualified

12  immunity is raised, the plaintiff has a --

13      THE COURT:  You're right.  They have to overcome

14  qualified immunity.  You're right.  You're right.  But you're

15  saying they didn't overcome it because your client didn't know

16  he did -- they didn't notify your client what he did wrong.

17      MR. TSCHIRHART:  They didn't overcome it because they

18  didn't show that there was clear authority in the past that

19  would tell my client what my client was doing was wrong.

20      THE COURT:  Counsel, you didn't -- you don't have any

21  clear authority that your client had the authority to do what

22  he did to begin with.  You don't have clear authority.

23      MR. TSCHIRHART:  Your Honor, I can tell you I don't

24  have statutory authority --

25      THE COURT:  You don't have any authority.  And you

Motion Hearing - February 2, 2024

1  cannot hold somebody criminally liable without it.  That is due

2  process.  That is basic.  That is basic constitutional law.

3       MR. TSCHIRHART:  And I don't disagree with you, Your

4  Honor.  But respectfully --

5       THE COURT:  So to have -- so to have judicial

6  immunity, you have to have had authority to begin with, legal

7  and lawful authority to enter a bad judgment, a bad opinion.

8  Okay?

9    This pulling stuff out of the ether is not working with me,

10 Mr. Tschirhart.  And especially when you're basically saying,

11 we don't have to give notice and we're excused, but you can't

12 excuse their lack of notice.

13   Everybody knows what this case is about.  It's about the

14 order for contempt.

15       MR. TSCHIRHART:  That's correct --

16       THE COURT:  And I think -- and I think part of the

17 confusion and maybe the disadvantage for you, Mr. Tschirhart,

18 is you weren't here for the first two days of hearings.  I

19 think that may be a bit of a disadvantage for you in this

20 matter.  But I did hear that -- all of those matters.

21       MR. TSCHIRHART:  I understand, Your Honor.  And, you

22 know, I apologize that I wasn't there.  But I wasn't hired --

23       THE COURT:  Well, you weren't -- you weren't -- at

24 that point you weren't noticed as an attorney.  You probably

25 didn't even know that it was going on.

Motion Hearing - February 2, 2024

1        MR. TSCHIRHART:  That's correct, Your Honor.

2        THE COURT:  Yeah.  I understand that.  And, in fact, I

3   think Mr. Stern mentioned it several times, that he would not

4   be the counsel for this part of the case, that somebody else

5   would come in.  So we were aware of that.

6        MR. TSCHIRHART:  But once they file -- once the

7   plaintiff filed an amended pleading and we asserted the

8   qualified immunity, plaintiff is bound to tell us or tell the

9   Court what authority there is out there --

10       THE COURT:  But you've got to have a basis to assert

11  qualified immunity, Mr. Tschirhart.

12       MR. TSCHIRHART:  Your Honor --

13       THE COURT:  You can't just throw it out there and say,

14  we're entitled to it, period.  You've got to establish a basis

15  for it, too.

16       MR. TSCHIRHART:  These are governmental -- these are

17  governmental officials --

18       THE COURT:  I get it.  I get it.

19       MR. TSCHIRHART:  -- acting in a governmental capacity.

20       THE COURT:  I get it.  But it's not enough.  Because

21  acting in a governmental capacity, there is a statute that says

22  how you hold somebody in contempt and sentence them to jail

23  time.  There is a statute out there.

24     And after consultation with counsel, that had to have been

25  known.

Motion Hearing - February 2, 2024

1      MR. TSCHIRHART:  Are you referring to the government
2  code statute?
3      THE COURT:  Uh-huh.
4      MR. TSCHIRHART:  Okay.  Because I --
5      THE COURT:  That's the only one that exists.
6      MR. TSCHIRHART:  I want to make sure we're talking --
7      THE COURT:  That's the only one that exists for notice
8  to people that they can be put in jail for contempt of
9  commissioners' court.  That's the only one.
10     And after consultation with counsel, action was not taken
11  consistent with that statute.
12     MR. TSCHIRHART:  Your Honor, my clients were not on
13  notice that what they were doing was illegal and violative of
14  the law.
15     THE COURT:  Whoa.  Wait a minute.  You just said they
16  consulted with counsel.  How did they not know that?  What is
17  counsel there for?
18     MR. TSCHIRHART:  Your Honor, do you think that they
19  acted contrary to what they were advised?
20     THE COURT:  I don't know.  I don't know what the
21  advice is because I didn't break the attorney-client privilege
22  situation.  I don't know what they were advised.
23     But the bottom line, isn't that what counsel is for?
24     MR. TSCHIRHART:  That is what counsel is for, Your
25  Honor.

Motion Hearing - February 2, 2024

1      THE COURT:  And after consulting with counsel, the
2  written order went out for contempt, and the sentence.
3      MR. TSCHIRHART:  That's correct, Your Honor.
4      THE COURT:  Okay.  So the judgment was entered.  Okay.
5      MR. TSCHIRHART:  That's correct, Your Honor.
6      THE COURT:  So at that point I can only presume that
7  counsel advised him correctly.  That's what counsel is usually
8  for.
9      MR. TSCHIRHART:  Well, and I don't know what the
10  advice was, Your Honor.
11      THE COURT:  I don't either.  And I didn't -- I don't
12  want to break the attorney-client privilege unless that's
13  something that your clients want to do or whatever.  I don't
14  want to break it.
15      MR. TSCHIRHART:  I think it's unnecessary for the
16  purposes of this argument, Your Honor.
17      THE COURT:  Okay.  But that's the bottom line.  You
18  keep relying on things and jumping back and forth.
19      MR. TSCHIRHART:  That is because there is --
20      THE COURT:  Because you're making --
21      MR. TSCHIRHART:  -- capacity claims --
22      THE COURT:  I know.
23      MR. TSCHIRHART:  -- and individual capacity --
24      THE COURT:  But you're making conclusory statements
25  and conclusory legal -- you're making conclusory legal

Motion Hearing - February 2, 2024

1    findings, that you're saying I have to find because you said

2    some magic words.  And it doesn't quite work that way either.

3          MR. TSCHIRHART:  Your Honor, I don't know what else to

4    tell you.  I've made my argument.

5          THE COURT:  Okay.  Go to -- you weren't finished with

6    the personal capacity ones.  Go to that.

7          MR. TSCHIRHART:  In the personal capacity, you have

8    assertion of qualified immunity.  At that point, once that

9    assertion is made --

10         THE COURT:  In their personal capacity?  Okay.

11         MR. TSCHIRHART:  Personal capacity.  That's right.  We

12    have official capacity claims.

13         THE COURT:  Right.

14         MR. TSCHIRHART:  They're not claims against the

15    individual.

16         THE COURT:  So there is qualified immunity as to both.

17      Go ahead.

18         MR. TSCHIRHART:  Okay.  Qualified immunity protects

19    people in their individual capacity, Your Honor.  But it

20    requires that the elected official be aware -- it says, an

21    officer can be stripped of qualified immunity only when the

22    violative nature of the particular conduct is clearly

23    established.

24      In sum, the controlling precedent must have placed the

25    question beyond debate with the right contours, sufficiently

Motion Hearing - February 2, 2024

1  definite that any reasonable official in the officer's shoes
2  would have understood that he was violating it.
3      Your Honor, they haven't -- plaintiff hasn't produced any
4  such authority, much less controlling authority.
5          THE COURT:  I'm just -- I'm laughing because it's
6  rich.  You haven't given me any authority for the initial
7  ability to enter such an order to begin with.  We're back to
8  square one.  It's circular.
9      Now, let's go to qualified immunity, that they have to be
10  on notice.  You're telling me that all of the folks, all the
11  judges aren't aware of the Fourth Amendment and illegal
12  searches and seizures?
13          MR. TSCHIRHART:  I think that judges are generally
14  informed of that when they go to judge school.  That's correct.
15          THE COURT:  Isn't that -- isn't that the nature of the
16  claimed violation?  I say "claimed."  Alleged in the amended
17  complaint.  Isn't that the nature of the complaint?
18          MR. TSCHIRHART:  I think that is one of -- that is
19  what is pled, Your Honor.  Yes.
20          THE COURT:  Okay.  So you're telling me that either --
21  any of your clients weren't aware of the Fourth Amendment and
22  illegal seizures and what would constitute --
23          MR. TSCHIRHART:  I don't think that there's any
24  authority to show that this particular seizure was illegal?
25          THE COURT:  I don't think you have any authority to

Motion Hearing - February 2, 2024

1  show that it was legal.  That's the problem here,

2  Mr. Tschirhart.  You don't have any authority to show that it

3  was legal.

4          MR. TSCHIRHART:  I understand, Your Honor.

5          THE COURT:  In fact, you don't have any authority to

6  show that anybody has the power to enter such an order to begin

7  with, even if it was wrong.

8          MR. TSCHIRHART:  We're arguing, Your Honor, that 1983

9  simply doesn't provide a remedy.

10         THE COURT:  I get it.  I get what you're saying,

11  Mr. Tschirhart.  You only said that about 20 times, whether I

12  asked the question or not.  I got that point from day one.

13     Okay.  So what are your other arguments?

14         MR. TSCHIRHART:  This bystander claim against the

15  individual --

16         THE COURT:  The commissioners.

17         MR. TSCHIRHART:  -- commissioners.

18         THE COURT:  Uh-huh.  Go ahead.

19         MR. TSCHIRHART:  -- that has been something that has

20  only been raised in connection with law enforcement officers in

21  excessive use of force cases.

22         THE COURT:  And so where does it say "law enforcement

23  officers"?

24         MR. TSCHIRHART:  All the case law that they cite to,

25  Your Honor, it's law enforcement officers.

Motion Hearing - February 2, 2024

1        THE COURT:  I thought there were some Fifth Circuit

2    cases that talk about "officer" and don't qualify it as law

3    enforcement.

4        MR. TSCHIRHART:  They don't qualify it as law

5    enforcement in the quote that is -- that is cited.  But they

6    were law enforcement officers.

7        THE COURT:  Okay.  But where in the -- but where in

8    the law does it require it to be law enforcement, as opposed to

9    "officers."

10        MR. TSCHIRHART:  There wouldn't be a requirement, Your

11    Honor.

12        THE COURT:  Okay.

13        MR. TSCHIRHART:  I think if you had a duty -- if you

14    had some sort of a clear duty, any officer, to prevent that.

15    Under this circumstance we know that law enforcement officers

16    were under a clear duty to prevent another law enforcement

17    officer from using excessive force.

18        THE COURT:  Correct.  But the -- but the fact that

19    they've always -- it's always been brought up in a law

20    enforcement context, where in the law does it require it to be

21    only law enforcement, as opposed to an officer?

22        MR. TSCHIRHART:  I suppose a court could find that --

23    and expand that particular thing.

24        THE COURT:  No.  That wasn't my question.

25        MR. TSCHIRHART:  I don't see anywhere in the law where

Motion Hearing - February 2, 2024

1    it is.  That exception was made for law enforcement.

2              THE COURT:  No.  There is no exception.  It says --

3    the case law says "officer."  There is -- I'm asking, do you

4    have any case that says "officer" only equals "law

5    enforcement"?

6              MR. TSCHIRHART:  No, Your Honor.

7              THE COURT:  Okay.  Is there any other -- I know that

8    it's only applied in law enforcement context, Mr. Tschirhart.

9    Yes.  Most of the 1983 cases are based on that.  I get that

10   part.

11      But is there anything in the law that requires it to be law

12   enforcement?

13             MR. TSCHIRHART:  No.

14             THE COURT:  Okay.  That's -- okay.  I'm making notes.

15             MR. TSCHIRHART:  All right.

16             THE COURT:  Okay.

17             MR. TSCHIRHART:  But in this particular instance, law

18   enforcement officers are on notice that they have that duty.

19   Therefore, a 1983 cause of action can stand against them, and

20   they will not be entitled to qualified immunity because the

21   courts have made it clear that they have that duty.

22             THE COURT:  Correct.

23             MR. TSCHIRHART:  Courts have not made it clear that

24   county commissioners have a duty to stop a county judge from

25   holding someone in contempt.  And, therefore, they're entitled

Motion Hearing - February 2, 2024

1   to qualified immunity.

2           THE COURT:  Okay.  But it doesn't have to be for

3   contempt.  It would have to be for any unlawful action,

4   wouldn't it?

5           MR. TSCHIRHART:  Under these circumstances, it would

6   have to be contempt.

7           THE COURT:  Okay.  So the bottom line is -- ignorance

8   of the law is no excuse, right?

9           MR. TSCHIRHART:  I would agree with you on that, Your

10  Honor.

11          THE COURT:  And there is a statute that talks about

12  how commissioners' court can find contempt, right?

13          MR. TSCHIRHART:  There is a statute, Your Honor.

14          THE COURT:  Okay.  So they can't claim a lack of

15  notice of that statute.  Now, I'm not saying that makes --

16          MR. TSCHIRHART:  I wouldn't say that we're not

17  claiming that.

18          THE COURT:  Okay.  And I'm not saying that would in

19  any way affect the analysis, Mr. Tschirhart.  I'm just trying

20  to get some things kind of lined out.

21      Okay.  So I'm not saying that they are liable under

22  bystander or they're not liable.  I'm not suggesting that.  I'm

23  just saying, when you're saying that there was no -- there's

24  nothing in the law that says commissioners are liable for

25  contempt findings, how does that mesh with the statutory

Motion Hearing - February 2, 2024

1  requirements?

2      MR. TSCHIRHART:  And maybe I need to be more specific,

3  Your Honor.

4      THE COURT:  Okay.

5      MR. TSCHIRHART:  There's nothing in the law that says

6  that commissioners have to stop the actions of a county judge.

7  They have no duty to do so.

8      THE COURT:  So what's the point of having a

9  commissioners' court and making them vote?  What's the point if

10 they -- if they can't override a county judge's actions?

11     MR. TSCHIRHART:  They can override a county judge's

12 actions in a number of instances, Your Honor, by voting on

13 something that's before them.

14     THE COURT:  Okay.  So if the statute requires a vote

15 of commissioners' court for contempt, by statute, how does that

16 mesh with the analysis here?

17     MR. TSCHIRHART:  This is a different kind of contempt.

18     THE COURT:  No, it's not, Mr. Tschirhart.  It just

19 does not exist.  What you're talking about, if it did exist, is

20 unconstitutional.  You cannot, out of the ethers, order

21 somebody to go to jail, with nothing else made or found or

22 given a chance.  It's unconstitutional, Mr. Tschirhart.  It

23 violates due process, period.  It just does not.

24     MR. TSCHIRHART:  The only way the commissioners' court

25 could utilize that particular provision would be to give notice

1  of a meeting and consider it in a meeting.  So you have to have

2  72 hours notice.  It'd have to be posted on a public agenda,

3  and then they get to vote on it at the meeting.

4         THE COURT:  Okay.  So my question -- my question is

5  this, Mr. Tschirhart.  Why could that not have been done here?

6         MR. TSCHIRHART:  I think it probably could have been

7  done here.

8         THE COURT:  Okay.  But you're saying, the fact that it

9  wasn't doesn't affect anything?  Doesn't change the outcome on

10 bystander liability from your point of view?

11        MR. TSCHIRHART:  That's correct, Your Honor.

12        THE COURT:  Okay.  Okay.  Keep going, Mr. Tschirhart.

13        MR. TSCHIRHART:  Your Honor, therefore, I think that

14 the individual commissioners are also entitled to qualified

15 immunity.

16        THE COURT:  Okay.  What else?

17        MR. TSCHIRHART:  That's it, Your Honor.

18        THE COURT:  Okay.  I'll give you rebuttal in just a

19 moment.

20        MR. TSCHIRHART:  Certainly, Your Honor.

21        THE COURT:  Okay.  Mr. Manning.

22        MR. MANNING:  May I approach, Judge?

23        THE COURT:  You may.

24        MR. MANNING:  Thank you.

25     May I proceed, Your Honor?

Motion Hearing - February 2, 2024

1          THE COURT:  Uh-huh.

2          MR. MANNING:  Thank you.

3      First, I want to give the Court my thanks for its grace on

4  allowing the pleading out of time.  And I appreciate the

5  Court's consideration for the cause that we submitted on that.

6  And I apologize.  In the future I'll ask with more time for --

7  more leave from the Court.

8      But if I may, Judge, a few things that I think need to be

9  set out as, kind of, thresholds.  The first, Your Honor, is

10 11th immunity has -- 11th Amendment immunity has consistently

11 been held to not be applied to local governments,

12 municipalities and all of that.

13     Mr. Tschirhart's argument essentially is predicated on

14 Judge Ramsey English Cantu having that immunity by virtue of

15 him allegedly being a judge, right?  But in this --

16          THE COURT:  What do you make of this direct contempt

17 authority?

18          MR. MANNING:  I don't think it's there.  Number one,

19 there's no authority --

20     *(Computer chime)*

21          THE COURT:  Go ahead.

22          MR. MANNING:  And perhaps the computer thinks I'm

23 right, Judge.

24     But nonetheless, there is no authority whatsoever for the

25 direct contempt, number one.

Motion Hearing - February 2, 2024

1    But in this context, as Your Honor has already mentioned,

2   the statute confers this authority on the entire commissioners'

3   court.  So as it relates to notice, the only notice that's

4   given is that is a legislative act that the legislative body

5   can make to hold someone in contempt, not an individual actor.

6    And, really, to get to the crux of it, Your Honor, that's

7   the seminal issue here.  We're alleging that Judge Cantu was

8   not acting as a judge.  In order for all of this to work the

9   way Mr. Tschirhart's arguing, he has to be in his capacity as a

10  judge.  But his --

11      THE COURT:  Okay.  But he -- but he was acting as a

12  county judge at the time.

13      MR. MANNING:  Respectfully, Judge, that's a misnomer.

14  That's merely his title, right?  His name is county judge.

15  He's not acting in a judicial capacity.

16    Mr. Tschirhart's own briefing shows that in the

17  Fifth Circuit, in one of the cases he cited, *Molina v.*

18  *Gonzales*, the judge has judicial immunity where it is derived

19  from his authority as a judge.  And, in fact, in that case the

20  Fifth Circuit said that some of his acts were outside of a

21  judicial capacity and, therefore, he wasn't -- couldn't avail

22  himself of qualified immunity.

23    So even in the context where someone is credibly acting as

24  a judge, they can be doing things that are outside of their

25  judicial authority and, therefore, not able to use qualified

Motion Hearing - February 2, 2024

 1   immunity.
 2          THE COURT:  Okay.  So, Mr. Manning, let's go to step
 3   one.
 4          MR. MANNING:  Sure.
 5          THE COURT:  Is the Court correct or incorrect in
 6   saying, before we get to even whether judicial immunity
 7   attaches, there has to be authority to issue the order versus I
 8   have the authority and I made a bad decision?
 9          MR. MANNING:  The Court is absolutely correct.  So
10   Your Honor's correct that he has to have that authority.  But
11   I'm saying, Judge, that that's predicated on the idea that he's
12   even acting as a judge.
13      As the Court knows from this video, this is a legislative
14   context.  And so the briefing, number one, is really more about
15   the legislative context.  In order for his argument to work --
16          THE COURT:  Is it legislative or administrative?
17          MR. MANNING:  In either event, we think we prevail.
18   But I would argue and we put in our briefing that it's
19   legislative.  And the reason, Your Honor, is because it came
20   out of resolutions being promulgated by the body, right, in a
21   legislative capacity.  But --
22          THE COURT:  So they were administering for the county
23   in a legislative capacity?
24          MR. MANNING:  Correct.  Yes, Your Honor.  That's our
25   position, that Judge Cantu was acting in a legislative

Motion Hearing - February 2, 2024

1    capacity.

2        And Mr. Tschirhart argues to the Court, both in his

3    briefing and here in open court, that there's an absolute

4    legislative immunity.  But that's not correct.  What the

5    Supreme Court has said is that you have an absolute legislative

6    immunity for "legitimate legislative acts."

7        So what that means is you're immunized if you promulgate a

8    law or you debate a bill as a senator or a house rep, right,

9    from liability.  You are not immunized if the action is not a

10   legitimate legislative action.  And our position is this:  It

11   inherently cannot be a legitimate legislative action if the

12   legislature en masse is provided that authority.  Not an

13   individual --

14            THE COURT:  But when you say that, you're talking

15   about the contempt order?

16            MR. MANNING:  Yes, Your Honor.

17            THE COURT:  Okay.  So let's -- let me move this back a

18   little bit.

19            MR. MANNING:  Okay.

20            THE COURT:  So if the lawsuit were trying to claim

21   some type of 1983 remedy based on a vote on the certificates of

22   obligation, say, that were the -- kind of, the starting point

23   of this particular case, that would be legislative immunity.

24   They were acting as a legislative body.  They may not have made

25   a decision that anybody liked, and they may have -- may have

Motion Hearing - February 2, 2024

 1   been wrong, but it wouldn't -- it would have been a protective

 2   action.

 3            MR. MANNING:  That's 100 percent correct.

 4            THE COURT:  Okay.

 5            MR. MANNING:  They would have been immunized.

 6            THE COURT:  Okay.  So let's bring it to the contempt

 7   of the legislative body actions.

 8            MR. MANNING:  Well, the only way that contempt can

 9   happen, that there's any authority conferred by the state

10   legislature, is where the commissioners' court, as Your Honor

11   has already mentioned, makes a legislative decision as a body,

12   right.  They vote, the five people vote to determine whether

13   they're going to hold someone in contempt.

14       And what's ironic about that is that's precisely what

15   provides the notice to the judge that he cannot act

16   unilaterally.  That's the crux of our argument.  He is not

17   individually conferred that authority, nor has Mr. Tschirhart

18   shown the Court authority where he can act individually.

19   That's a commissioners' court decision.  And --

20            THE COURT:  So would that not also be notice to the

21   commissioners' court that they have -- the commissioners, that

22   they have to act as a body?

23            MR. MANNING:  I would think so.  Yes, Your Honor.

24   That they have to make a collective decision, the same way they

25   did in the preceding questions about the resolutions that they

Motion Hearing - February 2, 2024

1   issued.
2          THE COURT:  Okay.  So let me give you a hypothetical,
3   Mr. Manning.  Let's say they acted as a legislative body, found
4   somebody in contempt.  It got appealed to a court later on, and
5   it was reversed.
6      Because they acted in conformity, as a body, with this
7   statute, they could be awarded some kind of immunity because
8   they may have -- been a wrong decision, but they acted in
9   accordance with law?
10         MR. MANNING:  Precisely.  Because the law actually
11  confers them, as a body, the authority to do that.
12     So that's what is, one, the reason he's not acting as a
13  judicial officer, because in a constitutional county court,
14  like this court, he may be a judicial officer where he's
15  presiding over criminal matters.  But in this context he's not.
16  He's acting as the administrator or in a legislative capacity.
17         THE COURT:  Well, but that's -- and that's the ironic
18  part.  According to what I'm hearing, he was actually acting as
19  a legislative actor, imposing a judicial sanction that was
20  without any type of due process protections.
21         MR. MANNING:  Exactly.  Attempting to impose that
22  sanction.  But he's not -- and I apologize for interrupting,
23  Your Honor.  But that's the crux of our position.  He's not
24  acting as a judge.
25     In order for Mr. Tschirhart's argument to work at all, it

Motion Hearing - February 2, 2024

1   has to be reformed and predicated on the idea that he's acting

2   in a judicial capacity.  But he's not.  Because if you watch

3   the video, which his briefing says should come in under his

4   12(b)(1) motion -- if you watch the video, what happened is

5   they had a number of resolutions, and then County Judge English

6   Cantu went on a soliloquy about all of these people who are

7   fraudulent and all of these things that are going on related to

8   the political part of it, at which time he then looked at my

9   client and threatened her to be held in contempt if she

10  continued talking, which is what he believed she was doing.

11      The reason that's problematic is, one, none of this has

12  anything to do with any judicial function.  And that is

13  unequivocally and demonstrably true from the video and the

14  testimony.

15      But beyond that, he's not acting in a judicial capacity and

16  cannot do it unilaterally.  So the statute very clearly and

17  unequivocally says the body does it, not him.  That puts him on

18  notice.

19      But beyond that, Fifth Circuit case law from 2017 and

20  before shows that a Fourth Amendment seizure without probable

21  cause is a clearly established -- you have a clearly

22  established right to be free from that.  So the Fifth Circuit

23  has said it, and the law that he was relying on said that he

24  couldn't do it unilaterally.

25      Beyond that, we know that to be the case because the actual

Motion Hearing - February 2, 2024

1  order tracks the statute.  The same period of time that she
2  would be punished for in the jail is exactly what he ordered
3  she be punished to.
4      Beyond that, anything that's in his briefing about any
5  off-color remarks that she said, those are -- those are
6  reprehensible.  But --
7          THE COURT:  Well, at some point it becomes disruptive.
8          MR. MANNING:  Sure, Your Honor.
9          THE COURT:  At some point it becomes disruptive.
10         MR. MANNING:  Sure.
11         THE COURT:  So there's -- the question, though, is
12 from what -- and, Mr. Tschirhart, I'm sorry that you haven't
13 had a chance to watch the video or the relevant portions that
14 have been admitted.
15     At the point where she's found in contempt, it hasn't yet
16 gotten disruptive.
17         MR. MANNING:  Exactly.  Exactly.  At the point that
18 she's found in contempt, she is threatened that if she
19 exercises her First Amendment rights, he will then hold her in
20 contempt.
21     And to Your Honor's earlier point, he never tells her what
22 the, you know, punishment would be in the event she met the
23 condition precedent of continuing to talk.
24     But outside of that, what they try to bring up as something
25 that substantiates him having the authority to hold her in

Motion Hearing - February 2, 2024

1  contempt, off-color remarks, that happened after he's already

2  given the order to hold her in contempt.  So it's really

3  immaterial as to the threshold question as to whether he had

4  the authority to hold her in contempt, which he did not.

5          THE COURT:  Well, in all Fourth Amendment matters you

6  don't go to the outcome to determine whether it justified the

7  beginning part --

8          MR. MANNING:  Exactly.

9          THE COURT:  -- the seizure part.  You can't go to the

10  outcome.  So it has to be viewed in sequence, time-wise

11  sequence as --

12          MR. MANNING:  Exactly.

13          THE COURT:  -- in terms of what was happening when.

14  And you can't justify it with the outcome.

15      So the question for the Court is, at this point, so if he

16  had just barred her from the meeting, any problems?

17          MR. MANNING:  I would think that that could

18  potentially still be problematic from the First Amendment

19  standpoint.  But whether there would be damages and whether

20  there would be a seizure, I don't think so.  I think, you know,

21  he could say, you need to leave the room, exactly as Your Honor

22  posited to Mr. Tschirhart earlier.

23      The problem is, that isn't what happens.  What he says is,

24  I'm going to hold you in contempt.  And then he says, bailiff,

25  I direct you to hold this woman in contempt.

1    And then he continued to double down.  And that becomes

2  another problem.  Even if you were to believe that at some

3  point down the road there's an actual basis for a contempt, all

4  the preceding actions, he has no authority to do.  And,

5  therefore, the contempt is invalid at its inception.

6    And in his own briefing that's exactly what the

7  Fifth Circuit said in that case with the judge.  And to give

8  the Court the very quick factual synopsis, what happened there

9  is a judge had a dispute on a road with a private citizen.  He

10 then put a red light on his car and pulled the guy over.  And

11 then he gave him a citation and said, you need to show up in

12 court tomorrow.  Then, when he went to court, he ultimately

13 found him, I think, guilty of some offenses.

14    But what the Fifth Circuit said is, where he was able to

15 act as a judge and he had the actual authority to do that, he's

16 immunized.  But you can't pull people over with this red light,

17 because you're not a cop.

18         THE COURT:  Okay.  But what I understand the argument

19 to be, because he was acting in his role, as the title

20 suggests, county judge --

21         MR. MANNING:  Right.

22         THE COURT:  -- in the county judge's or commissioner

23 court room, and they were in a official session, he is,

24 therefore, immune from any type of remedy, period.

25         MR. MANNING:  He's immune insofar as the official

Motion Hearing - February 2, 2024

1  capacity claims.  Mr. Tschirhart is not incorrect there, right?

2  Because when you sue a person in their official capacity, it's

3  tantamount to suing the county.

4          THE COURT:  The county and the state.

5          MR. MANNING:  Now, part of that is a pleading issue

6  because the original injunctive relief was against the county,

7  and there's no 11th Amendment immunity for injunctive relief,

8  right?

9      But irrespective of that, read in tandem, their official

10  and individual capacity.  So the problem is, Your Honor could

11  find, credibly, that he's immunized from the official capacity

12  claims and not immunized from the individual capacity claims.

13          THE COURT:  And that was part of the situation that I

14  didn't understand -- I understood Mr. Tschirhart's argument.

15  But it was basically bootstrapping.

16          MR. MANNING:  Right.

17          THE COURT:  Because he was acting in official

18  capacity, he is immune.  And he's even immune in his personal

19  capacity because he was acting in his professional capacity or

20  his official capacity.  So to me, that -- where is the logic in

21  suing in either capacity if they all collapse into one finding

22  anyway?

23          MR. MANNING:  Precisely.  And there is no Supreme

24  Court precedent that I've seen that says a suit in both

25  capacities somehow amalgamates to a suit in one superseding

 1  official capacity.  They're sued individually and officially.
 2  So even if Your Honor thinks that extricating the official
 3  capacity claims is appropriate, the individual capacity claims,
 4  they should not be able to avail themselves of qualified
 5  immunity.
 6          THE COURT:  I'm going to be honest with everybody.
 7  Where I'm hung up to begin with is, I feel you've got to have
 8  that initial authority to make the decision --
 9          MR. MANNING:  Right.
10          THE COURT:  -- before you're immuned from a bad
11  decision.
12          MR. MANNING:  That's exactly right.
13          THE COURT:  There's where I'm kind of hung up.
14  Because at this point, even if I'm sitting here in court with a
15  case in controversy in front of me in my judicial capacity, if
16  I were to order that somebody be taken out and shot, and I
17  don't have the authority to do that, I doubt very seriously
18  that I would be given any type of immunity for that.
19     Now, I'm not saying that's what happened in this particular
20  case or that it was that extreme.  But I'm saying, there's got
21  to be a limit to the -- to the immunity argument to a certain
22  degree because, otherwise, any particular finding is basically
23  saying that any county judge acting in any official capacity
24  can order whatever they want, and they're always immune from
25  any type of remedy.  As Mr. Tschirhart was saying, even state

Motion Hearing - February 2, 2024

1   and federal.  Not just 1983, but he said any civil remedy.

2       So the bottom line is, wouldn't we be recognizing then an

3   inherent, complete, absolute power of a county judge at that

4   point?

5           MR. MANNING:  You absolutely would, Judge.  That's a

6   hundred percent correct.

7       And his own briefing shows that neither of these

8   immunities, judicial immunity or legislative immunity, as we

9   characterized it, is unlimited.  In both instances there has to

10  be legitimacy to the action and, rather, really, to the

11  authority from whence you derive the ability to act as a judge

12  or act in a legislative capacity and then are, therefore,

13  immunized.

14      So he's trying to put the cart before the horse,

15  essentially, here.

16          THE COURT:  So what about Mr. Tschirhart's argument

17  about, there is no clear policy or pattern?  I don't think he

18  used the word "pattern."  But policy and procedure.

19          MR. MANNING:  Yeah.  He'd be protect if this were a

20  *Monell* case.  This is not a *Monell* case.  And it's immaterial

21  in this case.  The reason being, what he's trying to say is

22  suing them in their individual -- rather, in their official

23  capacity is tantamount to suing Maverick County, right?  In

24  which case you would have to bring *Monell* claims.

25      But we didn't do that because we didn't sue Maverick

Motion Hearing - February 2, 2024

1  County.  What we sued was Judge Ramsey English Cantu for his
2  individual capacity decision, where he has no authority, and
3  it's a complete ultra vires act.

4      And then we claim that the others in their individual
5  capacities have bystander liability.  Bystander liability does
6  not require any kind of *Monell* pleading.  So this is an attempt
7  to shoehorn it all into a *Monell* pleading to try to say that
8  the pleading's deficient because we didn't show a policy.

9      But how would you show a policy on one individual person's
10 action if they have an affirmative duty to step in where they
11 see a constitutional violation happening?  That's not how it
12 works.  Bystander liability is an individual question.

13         THE COURT:  Well, I would presume that any and every
14 county entity would have a policy that its actors would not
15 violate anybody's rights.  I would assume that it would only be
16 with counsel advising them.  They would have just an overriding
17 policy of that, right?  We're not going to violate anybody's
18 rights.  We don't act to violate anybody's rights, whatever
19 they -- you know, 4th, 5th --

20         MR. MANNING:  Right.

21         THE COURT:  -- national origin, whatever, ethnicity,
22 whatever.

23     So if you have that kind of a policy, what I'm
24 understanding the argument to be, in this particular case, even
25 though commissioners' court generally would have notice of this

Motion Hearing - February 2, 2024

1   contempt statute that would require their action, they would be
2   immune from any liability for failing to stop anybody from
3   entering a contempt order without commissioners' court action,
4   because they have this general policy of not violating people's
5   rights.
6           MR. MANNING:  Well, one, that would presume that
7   there's, in fact, that policy or at least adherence to that
8   policy.  But let's take that hypothetical.  Even with that,
9   from an individual standpoint, with an expansive reading of
10  *Whitley v. Hanna*, as we've put in our briefing, there's still a
11  duty incumbent on each individual officer to intervene where
12  they see a constitutional violation happening.
13      And if Your Honor remembers, which I'm sure you do, in the
14  testimony from Commissioner Ramos, she testified that they go
15  to the V.G. Young Institute, and they learn about how to be a
16  county commissioner.
17      And, in fact, the statute at issue squarely puts the
18  authority in the commissioners' court realm, not the county
19  judges realm.  So theoretically they're on notice, not only
20  from a federal constitutional perspective but from a state law
21  perspective, that this body collectively has to make this
22  decision, not an individual actor.
23      As such, inherently, if one individual actor is trying to
24  hold somebody in contempt, they should say, you can't do that
25  because we are the ones who have the duty to do that, or the

1   authority.

2         THE COURT:  So as I -- did I understand Mr. -- now,

3   Mr. Tschirhart, you can shake your head yes or no, to see if I

4   understood your argument correctly.

5      The argument in terms of bystander liability is the

6   commissioners couldn't have stopped the county judge from

7   entering the contempt citation because of this inherent right

8   or inherent authority.

9         MR. TSCHIRHART:  (Shakes head side to side.)

10        THE COURT:  That's not correct.  So I didn't

11  understand it correctly.  Okay.  I just wanted to doublecheck.

12  Okay.  Then that's clear.

13     So, I guess, then I'm understanding the argument to be,

14  because he had this inherent authority, the commissioner court

15  didn't have -- I mean, the commissioners didn't have a duty to

16  agree or not to agree or to intervene in any way.  Is that what

17  I'm understanding the argument to be?

18        MR. MANNING:  Perhaps that's Mr. Tschirhart's

19  argument.

20        MR. TSCHIRHART:  That's correct, Your Honor.

21        THE COURT:  Okay.  All right.  I just wanted to make

22  sure, Mr. Tschirhart.

23        MR. MANNING:  The reason that's a problem, though,

24  Judge, is -- I think you've spoken to that inconsistency.  You

25  can't have laws that give the authority to a legislative body,

Motion Hearing - February 2, 2024

1   right, but then have a single legislator of that body decide to
2   do whatever they want.  There's no reason to even codify the
3   law that says the commissioners' court has to hold somebody in
4   contempt if one actor, particularly the county judge, can just
5   do whatever they want.  That's not how it works, especially in
6   the context of it being seen as a legislative body.  So we're
7   arguing that he has no individual authority to do it.  And the
8   statute tells them that.
9       And they did then have the duty to intervene because
10  they're all on notice, because the state law says that.
11          THE COURT:  Well, let me ask you a question,
12  Mr. Manning.  Because one of the things that is curious in this
13  particular case is that, as it came out in the other hearings,
14  she's ordered arrested.  The bailiff is ordered to arrest her.
15  The bailiff isn't sure that this is something he should do.
16  They all go out.  The bailiff and the plaintiff go out.
17  They're waiting outside for -- to get clarification.
18      There's conference with counsel.  Counsel then gives them
19  legal advice.  A written order was entered, and the sheriff and
20  the deputies were ordered to take her into custody.  And the
21  only reason she wasn't immediately taken into custody is
22  because I'm not sure that the law enforcement officers felt
23  comfortable with the order.
24      So the question for the Court is, if the law enforcement
25  officers weren't comfortable with the order, how did the body,

Motion Hearing - February 2, 2024

1  that should have generated the order -- how were they

2  comfortable with it, or did -- I'm not remembering any evidence

3  one way or the other.

4          MR. MANNING:  That's a good question.  And

5  essentially, Your Honor, I don't know that it matters

6  necessarily if the individual bailiff is uncomfortable about

7  it, because we haven't sued the individual bailiff.

8          THE COURT:  No.  But I'm saying that tends to show

9  that there is some conscious belief on the part of folks that

10 maybe this order wasn't valid on its face.

11         MR. MANNING:  I think you're exactly right, Judge.  I

12 think there is a belief, or at least some of the people there

13 might have been concerned about whether this was a valid use of

14 the contempt power.

15         THE COURT:  They let the plaintiff go home.  Then they

16 called her back to the jail.

17         MR. MANNING:  Right.

18         THE COURT:  And at that point she goes through the

19 booking process, is what the evidence showed, if I remember

20 correctly.

21         MR. MANNING:  I don't recall her going home, but I

22 know she was somewhere before she --

23         THE COURT:  Oh, okay.  I thought --

24         MR. MANNING:  I could be incorrect.

25         THE COURT:  I thought she had indicated she was

Motion Hearing - February 2, 2024

 1  allowed to leave -- maybe I should say it this way.  She was
 2  allowed to leave the courthouse premises and then was called
 3  back to the sheriff's office.
 4           MR. MANNING:  I think that's correct, Your Honor.
 5           THE COURT:  Okay.  Was the evidence -- and if I'm --
 6  am I remembering correctly?  She was then put through the
 7  booking process and ended up sitting in a conference room when
 8  a telephone call was made, that was put on speakerphone.
 9           MR. MANNING:  That, I don't recall.  I don't want to
10  speak incorrectly.  But --
11           THE COURT:  Okay.  I don't remember if that was
12  evidence or if that was argument.
13           MR. MANNING:  She did go through the booking process.
14  But as far as I know, she never went to a cell.  So whether she
15  was in --
16           THE COURT:  No, no.  It was a conference room.
17           MR. MANNING:  Okay.
18           THE COURT:  I think it was a conference room, and
19  there was a phonecall with somebody.  And the call was on
20  speakerphone.
21           MR. MANNING:  Okay.
22           THE COURT:  I thought that was what the testimony was.
23           MR. MANNING:  I don't want to speak incorrectly,
24  Judge.  I'm sorry.
25           THE COURT:  I don't either.  I don't want to rely

Motion Hearing - February 2, 2024

1    incorrectly on -- although, I think we now have transcripts of

2    that, if they got completed.

3        But in any event, she ended up going to the sheriff's

4    office and turning herself in to the sheriff.  And even then,

5    there was some concern with the validity of the order.  Am I

6    remembering that correctly?

7            MR. MANNING:  That's correct, Your Honor.

8        And to that end -- I'm glad that you mentioned that.  The

9    fact that the county judge ultimately sought counsel and that

10   counsel ratified what he decided to do does not ameliorate the

11   fact that this was void ab initio.  It was void the moment the

12   direct order was given -- direct contempt order was given.  And

13   every decision thereafter in conformity are all void.  They're

14   all without any legal authority.

15       So I say that to say that I anticipate part of the argument

16   on rebuttal may be that, once Mr. Iracheta got involved and

17   said, "Hey, this is how you do it," that that somehow immunized

18   the judge.  And it does not, because Mr. -- you know, the

19   U.S. Attorney couldn't come tell you, "Yeah, Judge.  You said

20   you could take him outside and shoot him.  Now that's okay."

21   That would make it no less a legally-authorized decision.

22       And the same is true here.  At the point that he told her

23   to be held in contempt, it doesn't matter what happens after

24   that, even if he gets authority to do it.

25       And the bigger issue, Your Honor, as you well know, is this

 1  is a plausibility question right now.  This isn't a whether we
 2  win right now.  This is a plausibility question.  You've
 3  already heard all the evidence.  And we would submit to the
 4  Court that it's very plausible that she not only prevails on
 5  her 1983 action but that the immunities that they're claiming
 6  are not applied.  Those immunities aren't applied, then the
 7  jury could absolutely find that her Fourth Amendment right was
 8  violated.
 9        THE COURT:  I have a question forming, but it's not
10  quite there yet.
11     Go to bystander liability while I think -- while I think
12  about my -- the question that I -- that is forming in my mind.
13        MR. MANNING:  Sure.
14     Mr. Tschirhart is right insofar as most of the cases that
15  I've seen have applied bystander liability to a law enforcement
16  officer.  We conceded that in our briefing.  But as Your Honor
17  mentioned, the case that controls this, *Whitley v. Hanna*, a
18  Fifth Circuit case, does not say "law enforcement officer."
19  And the fact that it's customarily been applied in a law
20  enforcement context does not foreclose the possibility that the
21  Fifth Circuit in the right case could say, you have a duty to
22  intervene where you know that another government actor is
23  violating someone's rights.
24     And, frankly, at this stage, because it's plausibility and
25  not sufficiency, we would argue that the evidence has shown

Motion Hearing - February 2, 2024

1  that the commissioners didn't intercede.  Now, whether they did
2  that because they were mistaken or whether they did that
3  because they were politically aligned with the judge, as
4  opposed to anyone else, is really immaterial.  They did not
5  intervene.  And if you read this expansively, we argue that we
6  have plausibly and credibly pled it.

7          THE COURT:  Okay.  Let's be realistic, though.  We're
8  talking about a smaller county.  Okay?  We're talking about
9  people that may or may not be schooled on the statute.  They
10 talked to counsel.  Counsel says it can be done.  Here's the
11 statute.

12    How much responsibility would an attorney have in such a
13 situation?

14          MR. MANNING:  You mean Mr. Iracheta?

15          THE COURT:  Uh-huh.

16          MR. MANNING:  I think he would have a lot of
17 responsibility to, you know, properly advise his client.  But
18 attorneys make mistakes like everyone else.  But that's a --

19          THE COURT:  Oh, you're telling this court.

20          MR. MANNING:  Me included.

21    That is a different issue, though, than whether they have
22 an individual duty to intervene.  And we would be arguing that
23 that duty to intervene actually precedes Mr. Iracheta's
24 counsel.  His counsel comes after she's already been told -- he
25 has already told the bailiff to hold her in contempt.

Motion Hearing - February 2, 2024

```
 1          THE COURT:  So is your argument that on a bystander
 2   liability theory there has to be affirmative action to
 3   intervene?  Remaining silent is not sufficient to immunize
 4   them?
 5          MR. MANNING:  Exactly.  Because in the context -- if
 6   you look at it, you know, analogously to law enforcement
 7   officers, that's why sometimes people get prosecuted, right?
 8   For --
 9          THE COURT:  But is it in the law enforcement officers,
10   it has to be a supervisor that stands by and watches it, as
11   opposed to a person that's not in a position of authority over
12   the bad actor?
13          MR. MANNING:  I'm not sure, Your Honor.  I know there
14   is a supervisor liability claim.  I think with a bystander
15   liability claim, you don't have to be in a different level of
16   hierarchy.  I think it's -- you can be similarly situated.  You
17   recognize your fellow officer is violating someone's rights,
18   and you have an affirmative duty to intervene.
19      And that's where we're coming in.  We're saying the
20   commissioners who are watching this unfold in front of them
21   have an affirmative duty to say, sorry, Judge.  You can't do
22   that.  You can't hold him in -- hold her in contempt that way.
23          THE COURT:  So let me ask you a question, Mr. Manning.
24   Let's assume for a moment -- and I don't know -- I don't
25   remember -- y'all can correct me, but I don't remember.  I
```

Motion Hearing - February 2, 2024

1  don't remember if, after the plaintiff was removed from the
2  court setting, if whether there was an executive court session
3  so they could consult with counsel or there -- or there was no
4  testimony as to that.  I don't remember exactly what happened.
5       MR. MANNING:  I don't know if they ultimately went to
6  an executive session.  But what happens immediately thereafter
7  is the judge starts commenting about how he's not going to let
8  certain things happen.  He's not going to let people, you know,
9  usurp the county's decided plan to go forward.  There's
10 commentary in that respect.
11      But there's not -- there's not --
12      THE COURT:  If they had gone into executive --
13 let's -- then let's assume, hypothetically speaking, till we
14 review the transcripts, if they'd gone into executive session
15 and one of them had said, "Hey, that wasn't quite right,"
16 without them agreeing to release that information, obviously,
17 would -- not something that I would order because of the
18 privacy situation of the meeting.  Would that in any way have
19 helped or asserted some type of defense to any of the bystander
20 claims?
21      MR. MANNING:  I don't think so, Your Honor.  Because
22 if the initial act is void ab initio and it's happening in
23 front of them, then it's immaterial what happens on the back
24 end, except if the Court were to look at it as a series of
25 multiple detentions.  If you looked at the first time she was

Motion Hearing - February 2, 2024

1   detained as one detention, right, and then a subsequent

2   detention when he tells the bailiff again to hold her, you

3   know, put cuffs on her and all that, and then a subsequent

4   detention, then yes, I think you could break the chain if the

5   commissioners got involved and said, "Hey, Judge, you can't do

6   that," and then those subsequent detentions didn't happen.

7           But the initial detention and everything that flows

8   therefrom, we're arguing that it happens in front of them.  So

9   it doesn't matter what they say down the road because they have

10  a duty at that time to intervene.

11          THE COURT:  Keep going.

12          MR. MANNING:  That's it as it relates to the bystander

13  liability.  But, again, we would --

14      May I confer with my client, Your Honor?

15      *(Discussion off the record)*

16          MR. MANNING:  Again, Your Honor, we would just say

17  that there's no qualified immunity here, and there should not

18  be, and that the right is clearly established.  It was

19  established before this ever happened.  And, again, all of this

20  is predicated on him acting in a judicial capacity, meaning

21  Mr. Tschirhart's argument.  He's not acting as a judge.

22          THE COURT:  Okay.  So see if -- let me see if I'm

23  understanding what Mr. Tschirhart is saying.  One, we have

24  judicial immunity and, two, we have qualified immunity, or one

25  has to be on top of the other?

Motion Hearing - February 2, 2024

1          MR. MANNING:  He's saying both, and.

2          THE COURT:  That's what -- that's what --

3          MR. MANNING:  I'm saying -- right.

4          THE COURT:  I thought he was saying they're separate.

5     He's got judicial immunity and he's got qualified immunity, is

6     what I'm hearing.

7          MR. MANNING:  I think he is saying that as it relates

8     to the individual claims.  We're saying he's not immunized in

9     either circumstance, but he doesn't have judicial immunity

10    because he's not acting as a judge.  He has to be acting as a

11    judge to derive judicial immunity.

12        So we would respectfully say the Court shouldn't even

13    consider judicial immunity because he's clearly not acting as a

14    judge.  He's acting in a legislative or administrative

15    capacity, or maybe even a hybrid, a legislative capacity,

16    wherein he is the administrator over that legislative body.

17        The problem is, the authority to hold someone in contempt

18    is given to the legislative body and not him.  And as such,

19    he's acting outside of his realm of -- you know, sphere of

20    influence and, therefore, is not immunized.

21         THE COURT:  Okay.  Anything else right now,

22    Mr. Manning?

23         MR. MANNING:  No, Your Honor.

24         THE COURT:  Mr. Tschirhart, rebuttal?

25         MR. TSCHIRHART:  Thank you, Your Honor.

1    Judicial power is vested by Texas Constitution Article 4

2   [sic], Section 1, which states:  The judicial power of this

3   State shall be vested in one Supreme Court, one Court of

4   Criminal Appeals, Courts of Appeals, District Courts and County

5   Courts and in Commissioners' Courts.

6        THE COURT:  And say the -- say the last part again.

7        MR. TSCHIRHART:  In Commissioners' Courts.

8    So it explicitly vests judicial authority in the

9   commissioner court.

10   On Section 16 of Article 5 of the Texas Constitution --

11   excuse me, Your Honor.

12        THE COURT:  Which article did you say, again?  Article

13   what?

14        MR. TSCHIRHART:  Article -- the first I quoted was --

15        THE COURT:  No.  I got the first one.  Article 4,

16   Section 1.  What's the second one?

17        MR. TSCHIRHART:  It's Article 5, Section 1, Your

18   Honor.  And Article 5, Section 16, is the other.

19        THE COURT:  Okay.

20        MR. TSCHIRHART:  The county judge is the presiding

21   officer of the County Court and has judicial functions as

22   provided by law.  County Court judges shall have the power to

23   issue writs necessary to enforce their jurisdiction.

24        THE COURT:  You're saying that direct contempt is a

25   writ?

Motion Hearing - February 2, 2024

1    MR. TSCHIRHART:  I'm saying that, Your Honor.  And I'm

2   saying the Texas Supreme Court has interpreted this.  And I've

3   given the Court this authority, that they -- we had discussed

4   an inherent authority -- having that inherent authority as

5   being a judge.

6       The Texas Supreme Court has said inherent authority

7   emanates from the very fact that the court has been created and

8   charged by the Constitution with certain duties and

9   responsibilities.  Indeed, courts are universally acknowledged

10   to be vested, by their very creation, with the power to impose

11   silence, respect and decorum in their presence and submission

12   to their lawful --

13    THE COURT:  Okay.  So where there does it say, though,

14   that it also allows for the incarceration of a person who

15   doesn't do that?

16    MR. TSCHIRHART:  Your Honor, it does not say that in

17   the --

18    THE COURT:  That's the problem in this case,

19   Mr. Tschirhart.  That is -- I think that's the fly in this

20   ointment.

21    MR. TSCHIRHART:  And you have asked me where the

22   judicial authority is, Your Honor.

23    THE COURT:  No.  I know.  And, again, I said, you

24   know, telling her to leave, be quiet, whatever, I don't know

25   that I would have an issue in terms of that being within the

 1   realm of trying to keep order in a proceeding.  I'm just saying

 2   it's the incarceration part that throws this into a different

 3   sphere.

 4           MR. TSCHIRHART:  I understand, Your Honor.

 5           THE COURT:  Okay.  So that was Article 5, Section 16,

 6   that you just read?

 7           MR. TSCHIRHART:  That is correct.

 8           THE COURT:  Okay.  I've got that note.

 9           MR. TSCHIRHART:  And I read to you from a Texas

10   Supreme Court case, but --

11           THE COURT:  Do me -- okay.  Do me a favor,

12   Mr. Tschirhart.  Read Article 5, Section 1, again.

13           MR. TSCHIRHART:  Article 5, Section 1:  Judicial power

14   vested in courts.  Legislative power regarding courts.

15     And the text of it is:  The judicial power of this State

16   shall be vested in one Supreme Court, one Court of Criminal

17   Appeals, and the Courts of Appeals, and District Courts and

18   County Courts and Commissioners' Courts and Courts of Justices

19   of the Peace and in other such courts as may be provided by

20   law.

21           THE COURT:  Okay.  So is the "provided by law" an

22   explanation of the extent of the Commissioners' Court power?

23           MR. TSCHIRHART:  No, Your Honor.

24           THE COURT:  So what --

25           MR. TSCHIRHART:  The "other courts provided by law" is

Motion Hearing - February 2, 2024

1    other courts that might be created by the State of Texas.

2           THE COURT:  Created by law.  Okay.  That's what I

3    was -- I was trying to clarify.  Okay.

4           MR. TSCHIRHART:  That's right.

5           THE COURT:  So -- but, in essence, if by statute you

6    create a county court at law, say -- if this -- if the state

7    were to create a county court at law by statute --

8           MR. TSCHIRHART:  Okay.

9           THE COURT:  -- that divests the county judge of

10   misdemeanor authority?

11          MR. TSCHIRHART:  I apologize.  I got to "by statute,"

12   and the rest of it I didn't hear, Your Honor.

13          THE COURT:  Okay.  That's fine.

14      If the state were to pass a statute creating a county court

15   at law, by its creation it divests the county judge of

16   misdemeanor jurisdiction, criminal jurisdiction, does it not?

17          MR. TSCHIRHART:  I believe that's correct, Your Honor.

18          THE COURT:  Okay.  So as noted by law, that's -- there

19   can be other provisions that limit that particular inherent

20   authority?

21          MR. TSCHIRHART:  Which is correct, Your Honor.  And

22   that is, I think, why the Constitution specifically separates

23   out County Courts from Commissioners' Courts.

24          THE COURT:  Right.

25          MR. TSCHIRHART:  They're on the same -- they're on

Motion Hearing - February 2, 2024

```
 1  parity.
 2          THE COURT:  Right.  But only so far as there are not
 3  other statutes that limit them in their inherent authority,
 4  correct?
 5          MR. TSCHIRHART:  I agree, Your Honor.
 6          THE COURT:  Okay.  All right.  I'm just trying to make
 7  sure that I'm reading it correctly.
 8       All right.  Keep going, Mr. Tschirhart.
 9          MR. TSCHIRHART:  That was -- that was what I --
10  argument I had, that you asked me, Your Honor --
11          THE COURT:  Okay.
12          MR. TSCHIRHART:  -- and I was unable to articulate it
13  before.  And I wanted to be able to articulate it.
14          THE COURT:  Okay.  So the question becomes, again,
15  Mr. Tschirhart, that authority, though, doesn't give authority
16  to jail somebody for the right to keep order.  That would have
17  to be by the statute that we've been talking about.
18          MR. TSCHIRHART:  I believe, Your Honor, and our
19  argument is, that the Court has inherent authority to hold
20  someone in contempt --
21          THE COURT:  Okay.  I'm not talking about the Court.
22  I'm talking about the judge versus the Court.
23          MR. TSCHIRHART:  That the county judge has the
24  inherent authority to enforce his edicts.  That has included,
25  in the -- in the past, also incarcerating someone.
```

Motion Hearing - February 2, 2024

1       THE COURT:  Well, Mr. Tschirhart, what you're arguing
2   is that it's okay to violate due process rights.  That's what
3   you're arguing, and that's what shields your client.  That's
4   what you're arguing.  Because the statute inherently limits the
5   authority of anybody, to the commissioners' court to act, for
6   contempt, that ends up with a jail sentence.
7       MR. TSCHIRHART:  I don't believe that's the purpose of
8   the statute at all, Your Honor.
9       THE COURT:  Then what's the point of it, then?
10      MR. TSCHIRHART:  The point of the statute is to -- is
11  to be able to hold people in contempt, to enforce the authority
12  of the commissioners' court.
13      THE COURT:  Right.  But that the punishment is a jail
14  term, as opposed to any other remedy, right?
15      MR. TSCHIRHART:  That is -- that is included in that
16  statute, Your Honor.
17      THE COURT:  But based on your argument, this inherent
18  authority, that doesn't say anything about what the punishment
19  should be, you're saying that alone gives a county judge the
20  right to put somebody in jail, straightaway, without any action
21  by commissioners' court pursuant to the statute that imposes
22  the criminal sanction?
23      MR. TSCHIRHART:  I do not think that the action of a
24  county judge implicates that statute in any way, shape or form.
25      THE COURT:  Well, the bottom line is, though, what

Motion Hearing - February 2, 2024

1  you're relying on does not give him authority to throw anybody

2  in jail.  When you're putting somebody in jail, you have to

3  have that specific authority.  And you've got to give notice to

4  the people that that could be a remedy.

5       The only statute that gives that notice of that remedy is

6  the one of the commissioners' court.  There is no other statute

7  that gives notice to anybody, correct?  I'm just trying to be

8  really sure I'm not missing something.

9            MR. TSCHIRHART:  I do not know of any other statute

10  like that statute, Your Honor.

11           THE COURT:  Okay.  All right.  I understand that.  I

12  just want to make sure that I'm not missing something,

13  Mr. Tschirhart.

14           MR. TSCHIRHART:  That's correct, Your Honor.

15           THE COURT:  Okay.  Anything else that you'd like to

16  put on the record?

17           MR. TSCHIRHART:  I don't believe so, Your Honor.

18           THE COURT:  You've had a chance to say whatever you

19  wanted to say?  Everything --

20           MR. TSCHIRHART:  I did, Your Honor.

21           THE COURT:  Okay.  I didn't want to cut you off

22  because I know I told you I would let you finish your

23  arguments.  So if there's anything else you need to put on the

24  record, go ahead.

25           MR. TSCHIRHART:  I don't have anything else to put on

Motion Hearing - February 2, 2024

1    the record.
2           THE COURT:  Okay.  All right.  I will issue an order
3    on this matter.
4           MR. TSCHIRHART:  Thank you, Your Honor.
5           THE COURT:  All right.
6           MR. MANNING:  May we be excused, Your Honor?
7           THE COURT:  You may be excused.
8           MR. MANNING:  Thank you.
9    * * *
10       (11:09 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Motion Hearing - February 2, 2024

1                              -oOo-

2        I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above-entitled matter.

4

5    Date:  3/7/2024          /s/ Chris Poage
                              United States Court Reporter
6                             262 West Nueva Street
                              San Antonio, TX  78207
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25